STATE OF HAWAII, Plaintiff-Appellee, *v.* PIL DONG HAN, Defendant-Appellant

NO. 7150

CASE NO. C1978-1938

JUNE 17, 1981

RICHARDSON, C.J., OGATA, MENOR, LUM AND NAKAMURA, JJ.

*Per Curiam.* In a jury-waived trial, the trial court found the defendant guilty of promoting pornography in violation of HRS § 712-1214(1)(a) (1976).[1] He appeals from the judgment and sentence of the trial court.

On March 30, 1978, police officer Richard Nagao, in plainclothes, entered the Nui Nui Gift Shop on Ala Moana Boulevard, where the defendant was employed. While the officer was browsing around, the defendant approached him and asked him in Japanese whether he would be interested in seeing some "porno" films and magazines. When Nagao indicated that he would, defendant Han showed him to a small room, in a separate section of the shop, where the officer observed various 8 mm. films and magazines displayed on wall racks. The covers of the magazines depicted males and females engaged in sexual acts. After recommending certain "porno" films, Han selected one entitled, "Rock Hard," and showed Officer Nagao some segments of it. After viewing portions of the film, the officer purchased a copy of "Rock Hard" for $25.00 and four magazines for $8.00. After the purchase he left the premises.

At his arraignment, the defendant entered a plea of not guilty and waived his right to a jury trial. During the trial held on July 19, 1978, Officer Nagao was called as a State witness and the film and magazines he purchased from the gift shop were admitted into evidence. The film was subsequently viewed in open court. It essentially showed sexual activity between a nude adult female and two nude adult males. It showed the female engaging in fellatio with one man and in intercourse with the other, and the female thereafter participating in vaginal and anal intercourse simultaneously with her two male partners. The magazines were equally explicit in their portrayal of vaginal, oral and anal intercourse between nude males and females.

On these facts we hold that the defendant was properly convicted of promoting pornography by disseminating for monetary con-

---

[1] HRS § 712-1214(1)(a) (1976) provides:

Promoting pornography. (1) A person commits the offense of promoting pornography if, knowing its content and character, he:

(a) Disseminates for monetary consideration any pornographic material;

sideration pornographic material which is defined by HRS § 712-1210(5) (1976) as follows:

Any material or performance is "pornographic" if all of the following coalesce:

(a) Considered as a whole, its predominant appeal is to prurient interest in sexual matters. In determining predominant appeal, the material or performance shall be judged with reference to ordinary adults, unless it appears from the character of the material or performance and the circumstances of its dissemination that it is designed for a particular, clearly defined audience. In that case, it shall be judged with reference to the specific audience for which it was designed.

(b) It goes substantially beyond customary limits of candor in describing or representing sexual matters. In determining whether material or a performance goes substantially beyond the customary limits of candor in describing or representing sexual matters, it shall be judged with reference to the contemporary standards of candor of ordinary adults relating to the description or representation of such matters.

(c) It is utterly without redeeming social value.

There are thus three parts to the statutory standard by which the alleged pornographic material is to be judged: (a) its predominant appeal must be to prurient interest in sexual matters; (b) it must go substantially beyond the customary limits of candor in describing or representing sexual matters; and (c) it must be utterly without redeeming social value. All of these parts must coalesce before any such material may be deemed to be pornographic under the statute.

As to part (a), the United States Supreme Court has imposed the requirement that the factfinder must determine whether the average person, applying contemporary standards, would find that the work, taken as a whole, appeals to the prurient interest, and as to part (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law. Illustrative of part (b) material are (1) patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated; and (2) patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals. *Miller v. California,* 413 U.S. 15, 24-25 (1973); *reh. denied* 414 U.S. 881 (1973). This court, in construing

HRS § 712-1210(5) (1976), has incorporated the *Miller* standards with respect to parts (a) and (b) in its interpretation of the statute. *State v. Manzo*, 58 Haw. 440, 444-45, 573 P.2d 945, 949 (1977). And on the facts of this case, we have no difficulty in finding that parts (a) and (b) of the statutory requirements have been met. The material distributed by the defendant was nothing less than "hard-core" pornography.

The part (c) requirement, however, needs a more extended discussion. In *Miller* the Court expressly rejected the *Memoirs*[2] criterion that the material must be utterly without redeeming social value. It adopted instead, as a constitutional standard, the requirement that the work, taken as a whole, must lack serious literary, artistic, political or scientific value. *Miller* at 24. The statute, nevertheless, under which the defendant was charged, has retained the "utterly without redeeming social value" requirement. HRS § 712-1210(5) (1976). The only problem is that this criterion has never been clearly defined. *See Memoirs v. Massachusetts, supra; Roth v. United States*, 354 U.S. 476 (1957). It may be argued, however, that material portraying sexual intercourse between adult males and females does have some educational value, particularly where such material is being utilized in the more advanced types of sex education being offered in certain private schools and churches, and in the training of sex counselors, doctors, and others, and that to that extent it would have some social value.[3] But we need not resolve that

---

[2] Memoirs v. Massachusetts, 383 U.S. 413 (1966).

[3] Lockhart, *Escape From the Chill of Uncertainty: Explicit Sex and the 1st Amendment*, 9 Georgia L.Rev. 533, 555 (1975); see Money, *The Positive and Constructive Approach to Pornography*, 5 Technical Report of the Commission on Obscenity and Pornography 339 (1970); Glide Foundation, *Effects of Erotic Stimuli Use in National Sex Forum Training Courses in Human Sexuality*, Technical Report of the Commission on Obscenity and Pornography 354 (1970).

Some commentators emphasize the value of sexually explicit material for sex education in general. Studies have found that in a practical sense, commercial erotics is the only graphic information about sex that many adolescents ever receive. M. Goldstein and H. Kant, Pornography and Sexual Deviance, at 148 (1973). This is a thought-provoking finding considering the deficiencies of commercial erotica as an educational tool. Generally, explicit photographs in adult magazines are sexist stereotypes, technically poor and unaesthetic, and their portrayal of human sexuality is biased and incomplete. Mann, *The Uncommon Conscience*, 26 Stanford L.Rev. 1343, 1349 (1974). One alternative suggested by Mann is for sex educators to produce high

particular argument, for in this case the materials sold by the defendant were utterly without redeeming social value. Material which depicts deviate sexual activity, such as anal intercourse, in a patently offensive way can have no social or educational value whatsoever.[4] *Cf. People v. Buckley*, 65 Misc.2d 917, 320 N.Y.S.2d 91 (1971). It may titillate and even arouse the prurient interest; but it could never add to those social values worth preserving.

The defendant has also raised the question of whether it was mandatory for the prosecution to introduce evidence addressed to

---

quality explicit sex education materials of their own. Mann at 1350.

In addition to educational value, it has been suggested that sexually explicit materials which might otherwise be found obscene can have genuine therapeutic value in psychiatric treatment or marriage counseling. Hunsaker, *1973 Obscenity-Pornography Decisions*, 11 San Diego L.Rev. 906, 916 (1974); *See* MacCulloch and Birtles, *Anticipatory Avoidance Learning for the Treatment of Homosexuality*, 2 Behavior Therapy 151, 152 (1971); Gaupp, Stern and Ratliffe, *The Use of Aversion-Relief Procedures in the Treatment of a Case of Voyeurism*, 2 Behavior Therapy 585 (1971). Some commentators have suggested that, even apart from the clinical or counseling setting, there may be therapeutic value in the release of tension in sexually repressed viewers of pornography who might otherwise be driven to violence or public display. See, e.g., Murphy, *The Value of Pornography*, 10 Wayne L.Rev. 655, 660-62 (1964); B. Karpman, *The Sexual Offender and His Offenses* at 485 (1954). People "who read salacious literature are less likely to become sexual offenders than those who do not, for the reason that such reading often neutralizes what aberrant instincts they may have." Karpman at 485.

---

[4] Materials less explicit than those sold by the defendant here have been found to be utterly without redeeming social value in at least one jurisdiction. In People v. Ridens, 51 Ill.2d 410, 282 N.E.2d 691 (1972); cert. granted 421 U.S. 993 (1975); aff'd on rehearing 59 Ill.2d 362, 321 N.E.2d 264 (1974), the nude male and female models portrayed were not actually engaged in sexual activity but photographic sequences strongly suggested sexual activity, particularly oral-genital sex. In that case, the Illinois Supreme Court said:

We find that the sole appeal of these magazines is to the prurient interests; the dominant theme of these publications is to [sic] a morbid interest in nudity and sex. The scenes shown and the detail in the photographs are patently offensive in that such depiction goes beyond the customary limits of candor in this State. Not one of these magazines has any literary or artistic merit and they are utterly without redeeming social value. They are all obscene. 51 Ill.2d at 417, 282 N.E.2d at 695.

Subsequently, the United States Supreme Court granted certiorari, vacated the judgment, and remanded the cause for further consideration in light of Miller v. California, *supra*, 421 U.S. 993 (1975). Upon remand, the Illinois supreme court reaffirmed its earlier finding of obscenity. 59 Ill.2d 362, 321 N.E.2d 264 (1974). See also Court v. State, 51 Wis.2d 683, 188 N.W.2d 475 (1971); NGC Theatre Corporation v. Mummert, 107 Ariz. 484, 489 P.2d 823 (1971); compare, City of Tacoma v. Mushkin, 12 Wash.App. 56, 527 P.2d 1393 (1974).

community standards in Hawaii or to the absence of any redeeming social value of the alleged pornographic material. We hold that it was not. *Paris Adult Theatre I v. Slaton,* 413 U.S. 49 (1973), *reh. denied* 414 U.S. 881 (1973); *Hildahl v. State,* 536 P.2d 377 (Okla.Crim. 1975); *State v. Welke,* 298 Minn. 402, 216 N.W.2d 641 (1974). The film and the magazines admitted in evidence in this case provided a sufficient basis for the factfinder's determination on these issues. In *Paris,* the Court held that expert affirmative evidence that the materials were obscene was not required where the materials themselves were actually placed in evidence. It observed that the films introduced in that case were the best evidence of what they represented. And in *State v. Welke, supra,* the court said:

Whether, to "the average person applying contemporary community standards" the material is "patently offensive" or "appeals to prurient interest" does not require the assistance of expert testimony and is a question of fact for the trier of fact to determine from the material itself, when placed in evidence. 298 Minn. at 409, 216 N.E.2d at 647.

Affirmed.

*Stephen P. Pingree* for defendant-appellant.

*Keith Kaneshiro,* Deputy Prosecuting Attorney for plaintiff-appellee.