STATE OF HAWAII, Plaintiff-Appellant, *v.* LAWRENCE FURUYAMA, also known as Lawrence Hozo Furuyama, Defendant-Appellee

(CR. NO. 51097)

STATE OF HAWAII, Plaintiff-Appellant, *v.* SHIGERU HIRATA, Defendant-Appellee

(CR. NO. 51098)

STATE OF HAWAII, Plaintiff-Appellant, *v.* QUINDA PINZARI, also known as Quindo Peter Pinzari, Defendant-Appellee

(CR. NO. 51099)

STATE OF HAWAII, Plaintiff-Appellant, *v.* RAYMOND L. PETERMAN, also known as Raymond Leslie Peterman, Defendant-Appellee

(CR. NO. 51100)

STATE OF HAWAII, Plaintiff-Appellant, *v.* HILARIO BUMANGLAG, also known as Hilario Aluag Bumanglag, Defendant-Appellee

(CR. NO. 51101)

STATE OF HAWAII, Plaintiff-Appellant, *v.* WENCESLAO M. ALMODOVAR, Defendant-Appellee

(CR. NO. 51103)

STATE OF HAWAII, Plaintiff-Appellant, *v.* TIMI E. BLANCHARD, also known as Timi Edward Blanchard, Defendant-Appellee

(CR. NO. 51107)

STATE OF HAWAII, Plaintiff-Appellant, *v.* WILFRED J. SHIGETA, also known as Wilfred Junichi Shigeta, Defendant-Appellee

(CR. NO. 51108)

STATE OF HAWAII, Plaintiff-Appellant, *v.* HELEN KOLONIE, Defendant-Appellee

(CR. NO. 51109)

STATE OF HAWAII, Plaintiff-Appellant, *v.* JOSEPH GONZALES, Defendant-Appellee

(CR. NO. 51114)

STATE OF HAWAII, Plaintiff-Appellant, *v.* RAYMOND L. PETERMAN, also known as Raymond Leslie Peterman, Defendant-Appellee

(CR. NO. 51164)

NO. 7182

DECEMBER 17, 1981

RICHARDSON, C.J., OGATA, MENOR, LUM AND NAKAMURA, JJ.

OPINION OF THE COURT BY NAKAMURA, J.

Procedures employed in the enforcement of HRS § 712-1214, promoting pornography,[1] are at issue in these eleven appeals by the State of Hawaii from orders of the Circuit Court of the First Circuit dismissing the charges against defendants-appellees (hereafter defendants) in four of the cases on grounds that the warrantless arrests of the defendants were without probable cause and suppressing evidence, including allegedly pornographic publications, in the other cases on grounds that the seizures breached constitutional guarantees against unreasonable searches and seizures. While we also conclude the pertinent seizures of persons and evidence failed to meet standards imposed by the First and Fourth Amendments of the federal constitution and Article I, §§ 4 and 7 of the State Constitution, we nevertheless find the charges in the four cases should not have been dismissed. Exclusion of the evidence from trial, in our opinion, was the proper remedy for the unreasonable seizures.

I.

In disposing of the Motions To Dismiss or in the Alternative to Suppress Evidence filed by all defendants, the circuit court, with the parties' concurrence, divided the eleven cases into three groups on the basis of similarities in the dispositive facts. Substantial factual

---

[1] HRS § 712-1214 reads:

Promoting pornography. (1) A person commits the offense of promoting pornography if, knowing its content and character, he:
    (a) Disseminates for monetary consideration any pornographic material; or
    (b) Produces, presents, or directs pornographic performances for monetary consideration; or
    (c) Participates for monetary consideration in that portion of a performance which makes it pornographic.
    (2) Promoting pornography is a misdemeanor.
Each of the eleven defendants was charged with violating HRS § 712-1214(a).

resemblances in State v. Furuyama, Cr. No. 51097, State v. Hirata, Cr. No. 51098, State v. Pinzari, Cr. No. 51099, State v. Kolonie, Cr. No. 51109, and State v. Gonzales, Cr. No. 51114,[2] allowed them to be considered together. State v. Peterman, Cr. No. 51100, State v. Bumanglag, Cr. No. 51101, State v. Almodovar, Cr. No. 51103, State v. Blanchard, Cr. No. 51107, and State v. Shigeta, Cr. No. 51108, comprised the second group of cases with corresponding fact situations. But the operative facts in State v. Peterman, Cr. No. 51164, were not deemed conducive to its consideration with either of the foregoing groups, and this case was treated separately.

## A.

The following circumstances in State v. Furuyama typified the situations in the first group of cases. A Honolulu police officer dressed to give the appearance of a Japanese tourist entered the establishment where Defendant Furuyama was a salesclerk and observed some magazines packaged in clear cellophane. He selected two of them and examined their front and back covers, paid defendant for them, and then waited for his "partner or assisting officer" in the doorway of the establishment. When the other officer arrived the defendant was arrested, and the money given him earlier in "purchase" of the magazines was seized as evidence. Since the publications in question were sealed in cellophane, the officer's examination of their content was limited to the front and back covers, on which sexual activity was depicted.

The circuit court concluded the inspection of the magazine covers furnished no grounds for a warrantless arrest of Defendant Furuyama. In its opinion, an examination of the allegedly pornographic publications in their entirety was a necessary prerequisite to a determination of their obscene content and character. Thus it ruled probable cause upon which a valid warrantless seizure could have been predicated was absent. The remedy for the unreasonable seizure of Defendant Furuyama and other defendants similarly situated favored by the court was dismissal of the prosecutions.

---

[2] The circuit court included State v. Gonzales in the second group of cases. However, we believe it properly belongs in the first group.

## B.

The facts representative of the situations in the second group of five cases were those in State v. Peterman, Cr. No. 51100. Upon direction of his superior and in quest of pornographic material, an officer assigned to the vice division[3] of the Honolulu Police Department proceeded to the bookstore where Defendant Peterman was employed. After browsing through the display of magazines, the officer selected one and leafed through half of it. He then proceeded to the cashier's counter with the magazine, engaged in a short conversation with defendant, expressed a desire to purchase the publication, and paid for it with what the officer termed "my pre-recorded $20 bill." When the change therefrom was returned, he disclosed his identity and presented his "police credentials," placed the defendant under arrest, and confiscated the "pre-recorded $20 bill" as evidence.

The circuit court found the officer's thumbing through half of the magazine furnished the necessary probable cause for defendant's warrantless arrest. It therefore did not follow the course of dismissal adopted in the previous category of cases headed by State v. Furuyama. However, it concluded the transaction yielding the evidence in State v. Peterman was not a "purchase" but a "preconceived" attempt to circumvent constitutional requirements, particularly those covering the seizure of evidence in first amendment situations. And in its opinion the appropriate remedy for the violation was the exclusion of the seized items from evidence. Hence, the evidence impounded by the police in the second group of cases exemplified by State v. Peterman was suppressed.

## C.

Raymond L. Peterman also was the defendant in the case where the circumstances did not parallel the situation in either of the foregoing categories. The relevant facts in State v. Peterman, Cr. No. 51164, as stipulated and agreed to by the parties were as follows: several citizens and a police officer proceeded to the bookstore

---

[3] Vice division officers customarily conduct their investigations in "plain clothes."

where Peterman was employed; the private individuals leafed through several publications, decided they were pornographic in character and content, and handed them to the police officer; the officer then "purchased" the magazines, arrested the defendant, and impounded the publications as evidence of the crime for which the defendant was arrested.

Although the court recognized that private conduct is not regulated by the constitutional prohibition of unreasonable searches and seizures, it nevertheless concluded an invalid warrantless seizure had occurred. The police and the citizens' group, the court found, had acted in concert to effect a search and seizure, and suppression of the evidence was ordered.

### D.

A recent opinion of this court in a related case, *State v. Bumanglag,* 63 Haw. 596, 634 P.2d 80 (1981), has disposed of several of the issues raised. The questions remaining for decision here are:

1. Whether the warrantless arrests of defendants were valid;

2. Whether the warrantless seizures of evidence were subject to regulation under pertinent constitutional provisions, and if they were, whether they were valid; and

3. In the event any or all of the seizures of persons and evidence were invalid, what were the proper remedies for the constitutional violations involved.

### II.

The stated theme of the State's briefs on appeal is "that it is simply 'bad business' to sell allegedly obscene materials to undercover police officers." Viewing the transactions in which the evidence was obtained as bonafide purchases of pornography openly offered for sale, the State argues there were no seizures of evidence involved. It also maintains the warrantless arrests were premised on proper probable cause determinations and were therefore valid. We cannot agree, for the First and Fourth Amendments and Article I, §§ 4 and 7 of the Hawaii Constitution preclude an acceptance of the simplistic approaches urged upon us.

## A.

The "State is not free to adopt whatever procedures it pleases for dealing with obscenity," *Marcus v. Search Warrant*, 367 U.S. 717, 731 (1961), for "the line between speech unconditionally guaranteed and speech which may legitimately be regulated, suppressed, or punished is finely drawn," and "[t]he separation of legitimate from illegitimate speech calls for . . . sensitive tools." *Speiser v. Randall*, 357 U.S. 513, 525 (1958). A mere conclusion of a police officer on where the line has been drawn does not suffice as grounds for seizure where allegedly obscene materials are concerned, *Marcus v. Search Warrant, supra*, 367 U.S. at 731-32, and the State's impoundment of such evidence ordinarily[4] must be preceded by some form of judicial procedure "designed to focus searchingly on the question of obscenity." *Id.* at 732; *Lee Art Theatre, Inc. v. Virginia*, 392 U.S. 636, 637 (1968); *A Quantity of Books v. Kansas*, 378 U.S. 205, 210 (1964). As we observed in *State v. Bumanglag, supra*, the Supreme Court "has been scrupulous in its insistence that the sensitive task of distinguishing legitimate from illegitimate speech be confided in a judicial office, rather than in the police. *Lee Art Theatre v. Virginia, supra; Marcus v. Search Warrant, supra*." 63 Haw. at 606, 634 P.2d at 87.

We reviewed the impact of the foregoing constitutional precepts as well as the effect of the Court's holdings in *Heller v. New York*, 413 U.S. 483 (1973), and *Roaden v. Kentucky, supra*, on the State's power to seize material arguably subject to protection under the free speech guarantees of the United States and Hawaii Constitutions in *State v. Bumanglag, supra*. We concluded, *inter alia*, that a warrant for the seizure of expressive material should "not be issued solely on the conclusory opinion of a police officer that . . . [it] is obscene." 63

---

[4] In Roaden v. Kentucky, 413 U.S. 496, 505 (1973) (footnote omitted), which was an obscenity prosecution, the Supreme Court said:

> Where there are exigent circumstances in which police action literally must be "now or never" to preserve the evidence of the crime, it is reasonable to permit action without prior judicial evaluation.

The Court has not defined what may be a "now or never" exigency in a speech-related context. But none of the situations we are now considering could be called a "now or never" situation, even if the relevant phrase were to be applied loosely. The record indicates the seizures here, including those where the citizens' group was involved, resulted from planned forays into the bookstores by the police.

Haw. at 610, 634 P.2d at 89; *Roaden v. Kentucky, supra,* 413 U.S. at 506.

A logical corollary to the holding above is that a police officer may not effect a warrantless arrest in a setting where first amendment freedoms are implicated.[5] A warrantless arrest in any situation is justified only if there is probable cause to believe an offense has been or is being committed. *State v. Lloyd,* 61 Haw. 505, 509, 606 P.2d 913, 916 (1980); *State v. Vance,* 61 Haw. 291, 294, 602 P.2d 933, 937 (1979); *State v. Barnes,* 58 Haw. 333, 335, 568 P.2d 1207, 1209-10 (1977). A similar showing of such probability is a prerequisite for the issuance of a warrant authorizing a search and seizure. But just as an officer's conclusory opinion that arguably protected material is pornographic does not give rise to probable cause supporting the issuance of a warrant authorizing its seizure, *State v. Bumanglag, supra,* 63 Haw. at 612-14, 634 P.2d at 90-92, such opinion cannot sustain the warrantless arrest of its putative promoter. *See Roaden v. Kentucky, supra,* 413 U.S. at 504-506; *Marcus v. Search Warrant, supra,* 367 U.S. at 731-32.

### B.

Thus the arrests of defendants cannot be upheld, for they were all premised on the ad hoc obscenity determinations of police officers; nor can we approve seizures of evidence incident thereto. *Roaden v. Kentucky, supra,* 413 U.S. at 504-506; *State v. Bumanglag, supra,* 63 Haw. at 612-14, 634 P.2d at 90-92. The State, however, maintains the publications in question were purchased from willing sellers prior to the arrests, rather than seized, and the "purchases" therefore raise no issue of constitutional dimension.

We recognize that law enforcement practices in pursuit of evidence are not constitutionally regulated unless they are "searches" or "seizures" in a constitutional sense. 1 W. LaFave, *Search and*

---

[5] Here, we are not dealing with a "now or never" situation mentioned in passing by the Court in Roaden v. Kentucky, *supra.* As we stated earlier, the facts in these appeals would not sustain a contention that the police were confronted by such a situation. Thus, we leave for another day the discussion of warrantless seizures in speech-related contexts and their possible justification where exigent circumstances are present.

*Seizure, A Treatise on the Fourth Amendment* § 2.1, at 221 (1978). We further realize "implications of a search are inherent in any quest for evidence by the police, [but] no one has ever suggested that every instance of such seeking is a 'search'." *Id.* at 223. Still, we are instructed by the Court that "[c]onstitutional provisions for the security of person and property are to be liberally construed, and 'it is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon.' " *Byars v. United States,* 273 U.S. 28, 32 (1927) (citations omitted). Therefore, we are obliged to scrutinize the circumstances surrounding the transactions in the foregoing light to decide whether the enforcement practices in question were covered by the constitutional provisions regulating searches and seizures.

Though the State insisted the magazines were bought, the circuit court found the "purchases" actually were "preconceived seizures." A review of the record convinces us that every aspect of the missions in search of pornography and its purveyors was prearranged, including the repossession of the money given in "payment" for the evidence. Yet, an element essential to the validity of the seizures, judicial concurrence regarding the obscene nature of the evidence, was missing. And the failure to seek a judge's opinion on the obscenity *vel non* of the publications could not have been inadvertent. Viewing the transactions in their entirety, we also believe they were "preconceived seizures," designed in part to evade that phase of the warrant procedure whose specific purpose is the protection of first amendment freedoms.

What is particularly objectionable here is that the alleged purchase in every instance, as part of a single planned transaction, was immediately followed by a warrantless arrest and the seizure of the money given in exchange for the allegedly obscene matter. Such a transaction, in our opinion, could not have been a purchase; there was no intent to part with the money as in an ordinary sale. And the appropriation of the allegedly obscene material and tangible evidence of the transaction was tantamount to a warrantless seizure. While somewhat similar practices have been ratified in different contexts, *see, e.g., Lewis v. United States,* 385 U.S. 206 (1966),[6] first

---

[6] In *Lewis,* an undercover federal narcotics agent, after misrepresenting his identity, was invited to defendant's home to buy marihuana. The Supreme Court

amendment considerations militate against the approval of transactions expressly designed to evade specific warrant requirements governing the seizure of material arguably subject to constitutional protection. The submission of material patently obscene in the opinion of police officers for judicial examination may not have served a purpose, but it still was incumbent upon them to do so. For as the Supreme Court so aptly put it:

> The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.

*Johnson v. United States,* 333 U.S. 10, 13-14 (1948) (footnote omitted).

We are unable to sanction the seizures of evidence here, for we would then be party to the nullification of a Court-decreed "sensitive tool" to separate "legitimate from illegitimate speech." *Speiser v. Randall, supra,* 357 U.S. at 525. An aspect of the warrant procedure tailored to protect first amendment freedoms could not have been meant for easy evasion with a modicum of ingenuity. "If, as *Marcus* and *Lee Art Theatre* held, a warrant for seizing allegedly obscene material may not issue on the mere conclusory allegations of an officer, *a fortiori,* the officer may not make such a seizure with no warrant at all." *Roaden v. Kentucky, supra,* 413 U.S. at 506.[7]

## C.

The distinctive element in State v. Peterman, Cr. No. 51164, was the purported selection and determination by a citizens' group of

---

affirmed the trial court's denial of the motion to suppress the marihuana purchased by the agent.

Our holding here is a narrow one which is not meant to affect the validity of purchases made by undercover agents in settings where there is no deliberate effort to evade warrant requirements governing the seizure of arguably protected expressive material.

[7] Our holding here, as in the preceding section of the opinion, applies to seizures in speech-related contexts. Probable cause to believe an offense has been committed undoubtedly serves as the basis for warrantless arrests and seizures incident thereto where there are no first amendment implications.

what was allegedly obscene. There was no governmental search, the State avers, since the search, if one occurred, was private action. And again the State claims the magazines were bought, not seized. The circuit court found both propositions unpersuasive.

"The Fourth Amendment gives protection against unlawful searches and seizures, and . . . its protection applies to governmental action. Its origin and history clearly show that it was intended as a restraint upon the activities of sovereign authority. . . ." *Burdeau v. McDowell,* 256 U.S. 465, 475 (1921). An ostensibly private search is nevertheless governmental action if instigated by the authorities or if government agents participated therein. 1 W. LaFave, *supra,* § 1.6, at 114. Hence, "a search . . . physically conducted by a private individual but only at the government's initiation and under their guidance . . . is not a private search. *United States v. Newton,* 510 F.2d 1149, 1153 (7th Cir. 1975); *Corngold v. United States,* 367 F.2d 1, 5 (9th Cir. 1966)." *United States v. Haes,* 551 F.2d 767, 770 (8th Cir. 1977). And "where civilians 'act as agents of the police . . . the full panoply of constitutional provisions and curative measures applies.' *People v. Esposito,* 37 N.Y.2d 156, 160, 371 N.Y.S.2d 681, 685, 332 N.E.2d 863, 866 (1975)." *State v. Boynton,* 58 Haw. 530, 536, 574 P.2d 1330, 1334 (1978). The State, however, maintains neither a search nor a seizure was implicated. While a search may not have occurred, we think a seizure did.

In the prior situations, we concluded the "purchases" of the publications constituted elements of seizures structured in part to avoid the warrant procedure. We have no reason to view the pertinent "buy" in a different light. The selection of what was purportedly pornographic by the citizens' group was not a fortuitous prelude to governmental action. The group's presence at a particular bookstore in company with an undercover officer was hardly a happenstance. The individuals were not mere bystanders; they were active members of a police-directed, if not inspired, joint effort to gather evidence. There is no basis for viewing their deeds as essentially private action. There was a concerted and deliberate effort here to facilitate a quest for incriminating proof that also culminated in an illegal seizure.[8]

---

[8] In *Lustig v. United States,* 338 U.S. 74 (1949), Justice Frankfurter described a "search" in these terms:

[S]earch is a functional, not merely a physical, process. Search is not completed

This holding should not be construed as disapproval of citizen cooperation with law enforcement officers. For "it is no part of the policy underlying the Fourth and Fourteenth Amendments to discourage citizens from aiding to the utmost of their ability in the apprehension of criminals." *Coolidge v. New Hampshire,* 403 U.S. 443, 488 (1971). The object of our disapprobation is official conduct consisting of a joint venture to circumvent a Court-decreed procedure for the separation of legitimate from illegitimate speech that "demands a greater adherence to the Fourth Amendment warrant requirement" than the process for the seizure of " 'contraband or stolen goods or objects dangerous in themselves'." *United States v. Kelly,* 529 F.2d 1365, 1372 (8th Cir. 1976) (quoting *Roaden v. Kentucky, supra,* at 502).

### III.

Having found no error in the circuit court's determinations that the seizures of persons and evidence were unreasonable, we now consider the propriety of the court's remedial orders.

### A.

Finding an examination of the front and back covers of the allegedly obscene magazines did not supply the requisite probable cause upon which valid warrantless arrests could have been predicated, the circuit court concluded the arrests of the defendants in the first group of cases exemplified by State v. Furuyama, Cr. No. 51097, were illegal and dismissed the prosecutions against them. The question therefore is whether a defendant's illegal arrest bars his subsequent prosecution. We conclude it does not.

The question was also posed for decision in a recent case before the Supreme Court, and its unequivocal response was:

> Insofar as respondent challenges his own presence at trial, he cannot claim immunity from prosecution simply because his

---

until effective appropriation, as part of an uninterrupted transaction, is made of illicitly obtained objects for subsequent proof of an offense.

*Id.* at 78. While the foregoing may be precedent for considering "search and seizure" as a single, continuous transaction, our holding that the seizure here was unreasonable does not necessarily depend on an adoption of Justice Frankfurter's definition of a "search."

appearance in court was precipitated by an unlawful arrest. An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction. *Gerstein v. Pugh,* 420 U.S. 103, 119 (1975); *Frisbie v. Collins,* 342 U.S. 519 (1952); *Ker v. Illinois,* 119 U.S. 436 (1886).

*United States v. Crews,* 445 U.S. 463, 474 (1980) (footnote omitted). In an earlier case, "the District Court's dismissal was grounded in what it found to be past compulsory self-incrimination and in its apparent belief that this mischief could not be undone save by turning back the clock through ending the prosecution." *United States v. Blue,* 384 U.S. 251, 254 (1966). The Court reversed the dismissal of the prosecution and remanded the case for trial, stating its rationale for the decision in these terms:

> Even if we assume that the Government did acquire incriminating evidence in violation of the Fifth Amendment, Blue would at most be entitled to suppress the evidence and its fruits if they were sought to be used against him at trial. . . . Our numerous precedents ordering the exclusion of such illegally obtained evidence assume implicitly that the remedy does not extend to barring the prosecution altogether. So drastic a step might advance marginally some of the ends served by exclusionary rules, but it would also increase to an intolerable degree interference with the public interest in having the guilty brought to book.

*Id.* at 255 (footnote omitted). We likewise regard the drastic step of barring a prosecution altogether to remedy governmental irregularity in bringing a defendant to trial an undue "interference with the public interest in having the guilty brought to book." *Id.* "[C]losing the courtroom door to evidence . . . [flowing from] official lawlessness" is the customary remedy for violations of fourth amendment rights, *United States v. Crews, supra,* 445 U.S. at 474, and the public interest would be better served by suppressing the evidence obtained as a consequence of the unlawful arrests.[9] For the exclusionary "rule is calculated to prevent, not to repair. Its purpose

---

[9] Like the Supreme Court, we realize that in some cases, prosecution would be foreclosed by the absence of the tainted evidence. But this contemplated consequence would result from the exclusion of such evidence, and not from a complete bar to prosecution. The exclusion is meant to enjoin the government's benefiting from illegally obtained proof. If it has other evidence, it should be allowed to present the untainted proof at trial. *See* United States v. Crews, *supra,* 445 U.S. at 474-75.

is to deter — to compel respect for the constitutional guaranty in the only effectively available way — by removing the incentive to disregard it." *Elkins v. United States,* 364 U.S. 206, 217 (1960).

## B.

In the second category of cases headed by State v. Peterman, Cr. No. 51100, and in State v. Peterman, Cr. No. 51164, the circuit court ordered the suppression of evidence because the purported "purchases" of the magazines were, in actuality, illegal seizures. The court's application of the exclusionary rule as a remedy, in our judgment, was proper; it is also consistent with our rulings in *State v. Bumanglag, supra.*

There, we decided that exclusion of the illegally retained evidence consisting of allegedly obscene films was "the only effective sanction for the relevant infringements of first and fourth amendment freedoms." *State v. Bumanglag, supra,* 63 Haw. at 613, 634 P.2d at 92. We ordered suppression despite our perception of the reluctance of lower federal courts to do so where "the primary right involved is the public's First Amendment right of access rather than the defendant's Fourth Amendment immunity from unreasonable search and seizure." *United States v. Pryba,* 502 F.2d 391, 404-05 n.97 (D.C. Cir. 1974) (quoting *Huffman v. United States,* 470 F.2d 386, 392 (D.C. Cir. 1972). Suppression was necessary, we felt, "to vindicate the public's right of access to information and expressive material arguably protected by the First Amendment." *State v. Bumanglag, supra,* 63 Haw. at 615, 634 P.2d at 92. In essence, the remedy was designed to dissipate a possible "chilling effect" on free speech. The irregularities here probably had an effect that calls forth the same remedy.

The extensive seizures of arguably protected expressive materials and persons involved in their distribution occurred within a relatively short period of less than a fortnight.[10] The record further

---

[10] The seizures were executed on the following dates:
1. State v. Furuyama, Cr. No. 51097 — March 14, 1978.
2. State v. Hirata, Cr. No. 51098 — March 14, 1978.
3. State v. Pinzari, Cr. No. 51099 — March 14, 1978.
4. State v. Kolonie, Cr. No. 51109 — March 3, 1978.

discloses all of the seizures in the second group of five cases discussed under the rubric of State v. Peterman, Cr. No. 51100, were executed on the same day, March 3, 1978. Arrests and seizures of evidence stemming from a particular activity can be expected to inhibit others engaged in a similar or related activity. And when more than several seizures of persons and material following definite patterns are made within a short time span, they are more than likely to be perceived as harbingers of arrests of others who would dare to engage in similar activity. The *in terrorem* impact of such seizures cannot be discounted.

We realize the speech involved may be of the variety which is legitimately subject to punishment. But until a judicial officer has declared the obscene character and content of the publications in question, they are arguably subject to protection. Hence, their warrantless seizures were proscribed, and we conclude the seized magazines, as well as the other evidence secured by the Government in connection with the illegal seizures of persons and material evidence, were properly excludable from trial.

While these rulings may possibly engender difficulties in the prosecution of obscenity cases, we have no reason to believe adherence to the warrant procedure would unduly hamper the State. For it has been demonstrated to our satisfaction that the warrant requirement is not a barrier to the successful conviction of a defendant in a properly presented obscenity prosecution. In a recent case, *State v. Han,* 63 Haw. 418, 629 P.2d 1130 (1981), we affirmed the conviction of a defendant charged with promoting pornography. The officer in *Han* purchased four magazines and a film on March 30, 1978. On April 3, 1978, he presented the purchased articles to a district judge and obtained a warrant for defendant's arrest and a search warrant authorizing the seizure of *other* magazines and films of similar character and content. But only the material purchased by

---

5. State v. Gonzales, Cr. No. 51114 — March 2, 1978.
6. State v. Peterman, Cr. No. 51100 — March 3, 1978.
7. State v. Bumanglag, Cr. No. 51101 — March 3, 1978.
8. State v. Almodovar, Cr. No. 51103 — March 3, 1978.
9. State v. Blanchard, Cr. No. 51107 — March 3, 1978.
10. State v. Shigeta, Cr. No. 51108 — March 3, 1978.
11. State v. Peterman, Cr. No. 51164 — March 7, 1978.

the officer was used as evidence at trial. The defendant was convicted of promoting pornography on the strength of this evidence, and we affirmed the conviction. No procedural question with constitutional implications arose, for there was no deliberate attempt to circumvent the warrant procedure.

The order dismissing the prosecutions against four defendants is reversed, the orders suppressing evidence are affirmed, and the cases are remanded to the circuit court for further proceedings not inconsistent with this opinion.

*Patrick Border (Janice T. Futa* on opening brief; *Gail M. Kang* on reply brief), Deputy Prosecuting Attorneys, for plaintiff-appellant.

*Evan R. Shirley (Wesley H. Ikeda* with him on the brief; *Shirley & Jordan,* of counsel) for defendants-appellees.