108 P.3d 304

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Mary Ann KEAWE, Defendant–Appellant.**

No. 25659.

Supreme Court of Hawai'i.

March 15, 2005.

William A. Harrison (of Harrison & Matsuoka), on the briefs, for defendant-appellant Mary Ann Keawe.

Mangmang Qiu Brown, Deputy Prosecuting Attorney, on the briefs, for plaintiff-appellee State of Hawai'i.

Earle A. Partington, on the briefs, for amicus curiae American Civil Liberties Union of Hawaii.

MOON, C.J., LEVINSON, NAKAYAMA, and DUFFY, JJ.; with ACOBA, J., concurring separately.

Opinion of the Court by DUFFY, J.

Defendant-appellant Mary Ann Keawe appeals from the district court of the first circuit's October 9, 2003 judgment of conviction for prostitution in violation of Hawai'i Revised Statutes (HRS) § 712-1200 (1993 & Supp.2004).[1] As points of error, Keawe ar-

---

1. HRS § 712-1200, entitled "Prostitution," provides in relevant part:

(1) A person commits the offense of prostitution if the person engages in, or agrees or offers to engage in, sexual conduct with another person for a fee.

(2) As used in subsection (1), "sexual conduct" means "sexual penetration," "deviate

gues that the district court erred by: (1) denying her motion to dismiss; (2) denying Keawe's motion for acquittal; and (3) finding Keawe guilty. Keawe's motion to dismiss was based on her contention that her arrest was unlawful: she argues, *inter alia,* that her warrantless arrest for a petty misdemeanor, made twenty days after the alleged crime was committed, violated her statutory, common law, and constitutional rights. We agree that Keawe's warrantless arrest was unlawful; nevertheless, based on the following, we affirm the district court's judgment of conviction.

## I. BACKGROUND

On July 25, 2002, at approximately 10:30 p.m., Honolulu Police Department (HPD) Officer Steven Lewis was assigned to investigate prostitution activities at Hawaii By Night, a nude-dancing establishment. After entering the establishment (wearing "civilian type" clothing), Officer Lewis was approached by Keawe. Keawe introduced herself as "Victoria" and Officer Lewis introduced himself as Steven. Keawe then asked Officer Lewis if he wanted a private dance, and he said "okay." Officer Lewis testified that, based on his training and experience as an undercover officer with HPD's Narcotics/Vice/Morals Detail, a "private dance" was the same thing as a "lap dance" and connoted sexual contact for a fee.

After Officer Lewis agreed to a private dance, Keawe escorted him to a separate, divided section of the establishment where the private dances were performed. Keawe then quoted two prices for the private dance: thirty dollars for a topless dance or forty dollars for a nude dance. Officer Lewis said that he wanted to see everything, so he paid Keawe forty dollars. Keawe removed her

bikini top, placed her clothed groin area on top of Officer Lewis's clothed groin area, and moved in a circular motion. Keawe removed her panties, placed her head against Officer Lewis's clothed groin .area, and moved her head up and down against his clothed groin and penis. She subsequently stood up and moved her right leg up and down against his clothed groin and penis. Keawe then sat on Officer Lewis's lap, facing him, and began to move her groin area into his clothed groin area and penis "up and down, and back and forth, as to simulate sexual intercourse." The dance lasted four to seven minutes. When she finished, Officer Lewis asked Keawe for another dance. He paid her another forty dollars and she performed another dance, nearly identical to the first.

Officer Lewis recorded these acts in a police report. He also informed his investigating Sergeant as to what had happened that evening. He did not arrest Keawe that evening, however. Instead, Keawe was arrested on August 14, 2002—twenty days later—as part of an arrest raid of Hawaii By Night.

On October 11, 2002, Keawe filed a motion to dismiss the complaint; she argued, *inter alia,* that her arrest was unlawful because the arresting officer did not have a warrant for her arrest. On December 11, 2002, the district court denied this motion.[2] At the bench trial on January 22, 2003,[3] after the State of Hawai'i [hereinafter, the prosecution] rested, Keawe moved for a judgment of acquittal. The district court denied the motion. Keawe opted to rest on the evidence rather than present any evidence of her own, and the district court found Keawe guilty of prostitution. Keawe filed a timely notice of appeal on February 21, 2003.[4]

sexual intercourse," or "sexual contact," as those terms are defined in section 707–700.
(3) Prostitution is a petty misdemeanor.
. . . .
(5) This section shall not apply to any member of a police department, a sheriff, or a law enforcement officer acting in the course and scope of duties.

2. The Honorable Barbara Richardson denied the motion to dismiss.

3. The Honorable Clarence A. Pacarro presided over the trial.

4. The district court found Keawe guilty at the bench trial on January 22, 2003, and the conviction and sentence were noted by the·clerk on the district court's January 28, 2003 calendar. Keawe filed a notice of appeal on February 21, 2003. Pursuant to *State v. Bohannon,* 102 Hawai'i 228, 236, 74 P.3d 980, 988 (2003), however, we temporarily remanded this case to the district court for the filing of a written judgment. The district court entered a written judgment on

On appeal, Keawe argues that her arrest was unlawful and that there was insufficient evidence to convict her of prostitution. We agree that her arrest was unlawful, but we nevertheless affirm her conviction.

## II. STANDARDS OF REVIEW

### A. Warrantless Arrest

 The district court's conclusion that no warrant was required to arrest Keawe on August 14, 2002—twenty days after the alleged criminal conduct occurred—was a conclusion of law subject to de novo review. See Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., Ltd., 100 Hawai'i 97, 112, 58 P.3d 608, 623 (2002) ("Conclusions of law are reviewed de novo."). This conclusion required the district court to interpret a statute; as this court has repeatedly stated:

> The interpretation of a statute is a question of law reviewable de novo.

Furthermore, our statutory construction is guided by established rules:

> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

> In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(1) (1993). Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it ... to discover its true meaning." HRS § 1–15(2) (1993). "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1–16 (1993).

Korean Buddhist Dae Won Sa Temple of Hawaii v. Sullivan, 87 Hawai'i 217, 229–30, 953 P.2d 1315, 1327–28 (1998) (quoting State v. Cullen, 86 Hawai'i 1, 8–9, 946 P.2d 955, 962–63 (1997)) (some citations, internal quotation signals, ellipses, and brackets omitted).

### B. Motion For Judgment Of Acquittal

 The standard to be applied by the trial court in ruling upon a motion for a judgment of acquittal is whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the [trier of fact], a reasonable mind might fairly conclude guilt beyond a reasonable doubt. An appellate court employs the same standard of review.

State v. Pone, 78 Hawai'i 262, 265, 892 P.2d 455, 458 (1995) (quoting State v. Alston, 75 Haw. 517, 528, 865 P.2d 157, 164 (1994)) (alteration in original).

### C. Conviction

 We have long held that evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or a jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

State v. Batson, 73 Haw. 236, 248, 831 P.2d 924, 931 (1992) (citations omitted).

October 9, 2003. Therefore, pursuant to Hawai'i Rules of Appellate Procedure Rule 4(b)(4) (2004) ("A notice of appeal filed after the announcement of a decision, sentence or order but before entry of the judgment or order shall be deemed to have been filed on the date such judgment or order is entered."), Keawe's notice of appeal was deemed filed on October 9, 2003.

## III. DISCUSSION

### A. Keawe's Warrantless Arrest Was Unlawful, But Reversal Is Not The Proper Remedy.

#### 1. The warrantless arrest was unlawful.

■ This case requires an interpretation of HRS § 803–5 (1993), which provides that a police officer may make a warrantless arrest if that officer has probable cause to do so:

(a) A police officer or other officer of justice, may, without warrant, arrest and detain for examination any person when the officer has probable cause to believe that such person has committed any offense, whether in the officer's presence or otherwise.

(b) For purposes of this section, a police officer has probable cause to make an arrest when the facts and circumstances within the officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that a crime has been or is being committed.

The plain language of this statute does not require a police officer to make the warrantless arrest within any particular period of time, and the prosecution argues that Keawe's warrantless arrest was proper based on this plain language. Furthermore, according to the prosecution, neither the United States Constitution nor the Hawai'i Constitution requires a police officer to arrest an individual as soon as possible after finding probable cause.

Keawe, on the other hand, argues that a warrantless arrest is unlawful unless, after finding probable cause, the police make the arrest "immediately or soon thereafter." She urges this court to review HRS § 803–5 in light of HRS § 803–1 (1993), entitled "Arrest; by warrant," which provides that "[n]o arrest of any person shall be made without first obtaining a warrant or other process therefor from some magistrate, except in the cases provided in this chapter or otherwise provided by law." Keawe argues that an *in*

*pari materia* reading of these two statutes demonstrates that the power to arrest an individual without a warrant (provided by HRS § 803–5) is limited and should be construed narrowly.[5] We agree.

■ Again, HRS § 803–1 provides that, in order to make an arrest, the police must obtain an arrest warrant except where otherwise provided by law. Article I, section 7 of the Hawai'i Constitution provides in part that "no warrants shall issue but upon probable cause[.]" Thus, reading these two provisions together, a police officer cannot arrest an individual unless she or he obtains a warrant, and that officer cannot obtain a warrant unless she or he has probable cause; in other words, even if the officer has probable cause, the officer must first obtain a warrant unless Hawai'i law provides otherwise.

■ HRS § 803–5, therefore, provides an exception to this rule by allowing a police officer to arrest a suspect without a warrant if "the officer has probable cause to believe that such person has committed any offense, whether in the officer's presence or otherwise." According to the prosecution's logic, HRS § 803–5 allows a police officer to arrest any individual at any time for any crime, so long as the officer has probable cause. This interpretation of HRS § 803–5 would effectively negate HRS § 803–1: once a police officer determines that probable cause exists, the officer would never need to obtain a warrant—thus rendering HRS § 803–1 meaningless. As we have repeatedly held, " 'It is a cardinal rule of statutory construction that courts are bound, if rational and practicable, to give effect to all parts of a statute, and ... no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all words of the statute.' " *Coon v. City & County of Honolulu*, 98 Hawai'i 233, 259, 47 P.3d 348, 374 (2002) (quoting *Franks v. City & County of Honolulu*, 74 Haw. 328, 339, 843 P.2d 668, 673 (1993)).

Keawe advocates an interpretation of HRS §§ 803–1 and 803–5 that would place a temporal restriction on the police's HRS § 803–5

**5.** Amicus curiae American Civil Liberties Union of Hawaii also raises this argument.

power to make a warrantless arrest. We agree. We believe that this interpretation will give full effect to the legislature's intent because it maintains HRS § 803-1 as the general rule and HRS § 803-5 as the exception to that rule. This interpretation is also supported by reading HRS §§ 803-1 and 803-5 within the context of HRS chapter 803. As discussed, HRS § 803-1 sets forth the general rule, and HRS §§ 803-2 to 803-5 set forth exceptions to that rule. HRS §§ 803-2, 803-3, and 803-4 all contain an element of immediacy, thus justifying the departure from the general warrant requirement. HRS § 803-2 (1993), entitled "By oral order," provides:

> Where a breach of the peace or other offense has been committed, and the offender endeavors to escape, the offender may be arrested by virtue of an oral order of any magistrate, or without the order, if no magistrate is present.

HRS § 803-3 (1993), entitled "By person present," provides:

> Anyone in the act of committing a crime, may be arrested by any person present, without a warrant.

HRS § 803-4 (1993), entitled "On suspicion," provides:

> Whenever a crime is committed, and the offenders are unknown, and any person is found near the place where the crime was committed, either endeavoring to conceal oneself, or endeavoring to escape, or under such other circumstances as to justify a reasonable suspicion of the person being the offender, the person may be arrested without warrant.

Each of these exceptions envisions a situation in which a crime is in progress or the crime has just occurred: HRS § 803-2 deals with escaping suspects, HRS § 803-3 deals with crimes in progress, and HRS § 803-4 deals with individuals found hiding near a crime scene.[6] We believe that this element of immediacy is present in HRS § 803-5 as well, allowing a warrantless arrest where the police observe a crime in progress or develop probable cause to believe a crime has just occurred. This interpretation avoids the implied repeal of either HRS §§ 803-1 or 803-5 and, we believe, effectuates the legislature's actual intention in enacting HRS § 803-5.[7]

■ We limit our holding to those cases, like the instant case, in which the police have probable cause to arrest, have no obstacle preventing them from making the arrest, and wait a significant amount of time before making the arrest. We reiterate the long-standing rule that a police officer may make a warrantless arrest based on probable cause, *see, e.g., State v. Vance,* 61 Haw. 291, 294, 602 P.2d 933, 937 (1979) ("[A]n arrest without a warrant must be based on probable cause."); *State v. Texeira,* 50 Haw. 138, 142, 433 P.2d 593, 597 (1967) ("Officers have probable cause to make an arrest when the facts

6. Our reliance upon HRS §§ 803-2 to·803-4 is solely for the purpose of providing context for HRS § 803-5, and our discussion herein should not be used in interpreting HRS §§ 803-2 to 803-4.

7. Each of these statutes was originally enacted as part of Chapter 49 of the Penal Code of 1869, which provided:

1. No arrest of any person shall be made without first obtaining a warrant or other process therefor from some magistrate, except in the cases in this chapter hereinafter provided.
2. Where a breach of the peace or other offense has been committed, and the offender shall endeavor to escape, he may be arrested by virtue of a verbal order of any magistrate, or without such order, if no magistrate be present.
3. Any one in the act of committing a crime, may be arrested by any person present, without a warrant.
4. Whenever a crime is committed, and the offenders are unknown, and any person shall be found near the place where the crime was committed, either endeavoring to conceal himself, of endeavoring to escape, or under such other circumstances as to justify a reasonable suspicion of his being the offender, such person may be arrested without warrant.
5. Policemen, or other officers of justice, in any seaport or town, even in cases where it is not certain that an offense has been committed, may, without warrant, arrest and detain for examination such persons as may be found under such circumstances as justify a reasonable suspicion that they have committed or intend to commit an offense.

P.C. 1869, c. 49, at 117. These five paragraphs have evolved into HRS §§ 803-1 to 803-5, respectively. That these statutes were originally enacted at the same time further supports our holding that these statutes should be read in relation to one another.

and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient in themselves to warrant a man of reasonable caution in the belief that [a crime was being committed][.]" (Quoting *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925).) (First set of brackets in original.)); however, if the police wish to delay the arrest for tactical reasons, the police may not rely upon HRS § 803–5 to proceed without a warrant.

Pursuant to HRS § 803–5, Officer Lewis could have arrested Keawe on July 25, 2002 either during or immediately after Keawe's dances. If Officer Lewis believed that he needed assistance in making the arrest, HRS § 803–5 certainly allowed Officer Lewis a reasonable amount of time to call other officers to assist him. Other types of delays may be proper: for example, if the delay between the development of probable cause and the arrest occurs because the police are attempting to identify, locate, or apprehend a defendant, the arrest will satisfy HRS § 803–5. However, if the police believe that waiting days or weeks to arrest a defendant is the most appropriate action under the circumstances, as occurred in the instant case, then the police cannot rely upon HRS § 803–5 and must obtain a warrant pursuant to HRS § 803–1.[8]

Because we base our holding on our interpretation of the language of HRS chapter 803, we need not address Keawe's constitutional arguments. *See W.C. Peacock & Co. v. Republic of Hawaii*, 12 Haw. 27, 33 (1899) ("It is a general principle that courts should not pass upon difficult and grave questions of constitutional power and declare statutes invalid where this can be avoided."). Similarly, because we conclude that Keawe's arrest was unlawful, we need not address Keawe's argument that her arrest violated her right to privacy because it took place at 11:50 p.m. at her workplace.

**2. Notwithstanding the unlawful arrest, we affirm Keawe's conviction.**

Keawe's illegal arrest, standing alone, is insufficient to entitle her to a reversal of her conviction. *See State v. Furuyama*, 64 Haw. 109, 122, 637 P.2d 1095, 1103 (1981) ("An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." (Quoting *United States v. Crews*, 445 U.S. 463, 474, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980).)). *See also Gerstein v. Pugh*, 420 U.S. 103, 119, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) ("[I]llegal arrest or detention does not void a subsequent conviction."). Ordinarily, when a defendant is arrested unlawfully, the proper remedy is to suppress the evidence collected as a result of the arrest. As we have stated:

"[C]losing the courtroom door to evidence ... [flowing from] official lawlessness" is the customary remedy for violations of fourth amendment rights, *United States v. Crews, supra*, 445 U.S. at 474, 100 S.Ct. 1244 and the public interest would be better served by suppressing the evidence obtained as a consequence of the unlawful arrests. For the exclusionary "rule is calculated to prevent, not to repair. Its purpose is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it." *Elkins v. United States*, 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960).

*Furuyama*, 64 Haw. at 122–23, 637 P.2d at 1104 (footnote omitted) (alterations in original). In the instant case, however, the prosecution's case rested solely on Officer Lewis's observations on July 25, 2002; the prosecution did not introduce any evidence collected as a result of Keawe's unlawful arrest on August 14, 2002. In other words, there is no evidence to suppress, such that remanding this case for another trial would be meaning-

---

8. The prosecution attempts to counter Keawe's argument by citing to two Hawaiʻi cases in support of its contention that the warrantless arrest in the instant case was proper. However, in both cases, the police officer arrested the defendant immediately upon observing the alleged criminal behavior. *See State v. Kapoi*, 64 Haw. 130, 132, 637 P.2d 1105, 1108 (1981) (simple trespass occurred in presence of officer); *State v. Vance*, 61 Haw. 291, 295, 602 P.2d 933, 937 (1979) (assault committed in presence of officer). These cases, therefore, do not assist the prosecution.

less.[9] Therefore, we decline to overturn Keawe's conviction.

### B. *The District Court Did Not Err In Concluding That Keawe Was Guilty.*

■ Keawe argues that the district court erred in denying her motion for judgment of acquittal and in concluding that she was guilty of prostitution. She argues that any sexual contact with Officer Lewis was gratuitous, and was therefore not prostitution: she contends that her agreement with Officer Lewis required only that she dance nude for forty dollars and did not require any sexual contact. She points to Officer Lewis's statement that, once he gave Keawe forty dollars and she took off her clothes, he would not have been able to get his money back even if she had not touched him.

We disagree. Officer Lewis testified that, in his experience, a "private dance" usually involved sexual contact for a fee; in the instant case, Keawe offered Officer Lewis a "private dance" for forty dollars and this dance included sexual contact. Viewing the evidence in the light most favorable to the prosecution, the district court did not err in denying Keawe's motion for judgment of acquittal. Similarly, there was substantial evidence to support the district court's conclusion that Keawe had violated HRS § 712–

1200. Therefore, we decline to overturn Keawe's conviction.

## IV. CONCLUSION

Based on the foregoing, we affirm the district court's October 9, 2003 judgment of conviction and sentence.

### Concurring Opinion by ACOBA, J.

I concur in the result and agree that Hawai‘i Revised Statutes (HRS) §§ 803–1 to 803–5 (1993) indicate a preference for an arrest warrant. But I also believe that our constitution's prohibition against an "unreasonable seizure," Haw. Const. art. 1, § 7 (2004),[1] ultimately defines the circumstances in which warrantless arrests may be made. Insofar as the statutes referred to and other related statutes may not pass constitutional scrutiny in certain circumstances, they would not be controlling. *See State v. Barros*, 98 Hawai‘i 337, 346–47, 48 P.3d 584, 593–94 (2002) (Acoba, J., concurring and dissenting) (explaining that "an arrest for jaywalking, as purportedly permitted under HRS § 803–6, would violate our state constitution's prohibition against unreasonable governmental seizures"); *cf. State v. Garcia*, 77 Hawai‘i 461, 467, 887 P.2d 671, 677 (App.1995) (holding "that HRS § 803–37 violates the Hawai‘i

---

9. Similarly, reversing Keawe's conviction would serve no purpose, as the State could simply obtain a warrant for Keawe's arrest and re-prosecute her. *Furuyama*, 64 Haw. at 122, 637 P.2d at 1103 ("An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution[.]" (Quoting *Crews*, 445 U.S. at 474, 100 S.Ct. 1244.)). *See also State v. Smith*, 131 Wis.2d 220, 388 N.W.2d 601, 609–610 (1986) ("[T]reating an illegal arrest as a jurisdictional defect ... merely elevates form over substance; it will not deter illegal arrests *per se*. The state may simply rearrest a defendant after lack of jurisdiction has been found.... We instead protect the fourth amendment values jeopardized by an illegal arrest through use of the exclusionary rule.").

We feel constrained to recognize that, despite the unlawfulness of Keawe's warrantless arrest, our holding does not provide Keawe with a remedy. This case presents the rare situation in which the legislature has created a right without a remedy, *see Kamau v. County of Hawaii*, 41 Haw. 527, 539 (1957) (" '[F]or every wrong there is a remedy.' "); *Dana v. Angel*, 1 Haw. 196, 197 (1855) (" 'It would be matter of surprise as well as regret, if in a system of jurisprudence that has been matured by the wisdom of ages, adequate

remedies were not provided for the violation of every important civil right.' " (Quoting *Hadden v. Spader*, 20 Johns. (N.Y.) 554, 562.)); nevertheless, we decline to create a remedy, as that is within the purview of the legislature. *See State v. Walker*, 106 Hawai‘i 1, 8, 100 P.3d 595, 602 (2004) ("A cardinal canon of statutory construction is that this court cannot change the language of the statute, supply a want, or enlarge upon it in order to make it suit a certain state of facts. This is because we do not legislate or make laws." (Citations, internal quotation signals, and brackets omitted.)).

1. Article I, § 7 of the Hawai‘i Constitution states that

> [t]he right of the people to be secure in their persons, houses, papers and effects *against unreasonable* searches, seizures and invasions of privacy *shall not be violated;* and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized or the communications sought to be intercepted.

(Emphases added.)

Constitution to the extent that it permits the police to break into the place to be searched if 'bars' to their entrance are not immediately opened").

As to this case, Defendant–Appellant Mary Ann Keawe correctly argues that "[Plaintiff–Appellee State of Hawai'i] had ample time to obtain a judicial arrest warrant prior to the arrest in this matter[,]" thus making the warrantless arrest "unreasonable." Because the police plainly had sufficient time to obtain an arrest warrant, I am reluctant to subscribe to specific limitations upon their obligation to do so, *see* majority opinion at 309, in the absence of facts in this case that necessitate such considerations, *cf. State v. Harada,* 98 Hawai'i 18, 42 n. 1, 41 P.3d 174, 198 n. 1 (2002) (Acoba, J., concurring and dissenting) (stating that construction of HRS § 803–37 as to execution of a search warrant must be determined in the context of a specific case), or believe it is necessary in this case to venture, *see* majority opinion at 311 n. 9, beyond the general established proposition that an illegal arrest will not result in exclusion of the defendant from trial, but only in preclusion of evidence which is the fruit of such an arrest.