Submitted on record and briefs March 27, affirmed May 30, reconsideration denied July 12, petition for review denied, 284 Or 521 (1978)

STATE OF OREGON, *Respondent,*

*v.*

CHARLES PAUL GRABILL, *Appellant.*

(No. C 77-03-03286, CA 8991)

579 P2d 316

J. Bradford Shiley, Portland, filed the brief for appellant.

James A. Redden, Attorney General, Al J. Laue, Solicitor General, and James C. Rhodes, Assistant Attorney General, Salem, filed the brief for respondent.

Before Schwab, Chief Judge, and Lee, Richardson and Joseph, Judges.

JOSEPH, J.

## JOSEPH, J.

Defendant appeals his conviction by a jury on three counts of disseminating obscene material. ORS 167.087.

As operator of a massage parlor defendant came under investigation in late 1976 by an undercover police agent posing as the managing employee of a local magazine which advertised adult entertainment. The agent asked if defendant could furnish films depicting children engaged in explicit sexual acts. Defendant replied that he did not sell that kind of material and suggested that the agent check some adult bookstores. The agent explained that he was having financial problems and needed to acquire the films for resale to another man. If he did not get the films, the agent told defendant, he would not have sufficient funds to publish the magazine the next month. Because the advertisements in the magazine were vital to his business, defendant claimed, he agreed to get the films.

Several weeks later, when the agent stopped at defendant's place of business to inquire about the films, defendant sold him three items—a packet of black and white photos, a packet of color photos and a magazine entitled "Sweet Linda"—which defendant had obtained from the same person who subsequently supplied him the films. A few days after the agent purchased the photos and magazine, defendant sold him two films of the type for which he had asked.

Defendant was charged in two separate indictments with disseminating obscene material. The first indictment, in three counts, was based on the sale of the two packets of photographs and the magazine. The second indictment, alleging an additional two counts, was based upon the sale of the films. The charges were consolidated for trial. Defendant's primary defense was entrapment. The jury returned guilty verdicts on all three counts of the first indictment and not guilty on both counts of the second indictment.

[ 641 ]

■ Defendant raises several assignments of error. First, he argues that his motion for judgment of acquittal should have been granted on the ground that none of the three items upon which he was convicted was within the statutory definition of obscene material. ORS 167.087(2) defines matter as obscene if:

"(a) It depicts or describes in a patently offensive manner sadomasochistic abuse or sexual conduct;

"(b) The average person applying contemporary state standards would find the work, taken as a whole, appeals to the prurient interest in sex; and

"(c) Taken as a whole, it lacks serious literary, artistic, political or scientific value."

Defendant asserts that only a minimal portion of each item depicts sexual conduct. As used in ORS 167.087, sexual conduct means

"human masturbation, sexual intercourse, or any touching of the genitals, pubic areas or buttocks of the human male or female, or breasts of the female, whether alone or between members of the same or opposite sex or between humans and animals in an act of apparent sexual stimulation or gratification." ORS 167.060(10).

Five of the eight black and white photographs depict actual or simulated acts of sexual intercourse, masturbation or oral sex involving a man and a woman. Of the six color photos, five depict actual or simulated acts of masturbation or oral sex involving either a man and a woman, two women or an individual woman. The magazine "Sweet Linda" contains numerous pictures of an apparently pre-teenage girl in various poses. Some of the photographs do not depict any sexual conduct within the statutory definition, but several others show the girl engaged in acts of self-stimulation. The trial court properly denied the motion for judgment of acquittal.

■ Defendant next argues that his motion in the alternative for acquittal or for a new trial should have been granted on the ground that the verdicts of the jury on the two indictments were inconsistent. He

relies primarily upon *People v. Phillips,* 43 Mich App 581, 204 NW2d 250 (1973), for the proposition that an appellate court has the authority to overturn a criminal conviction if there was no rational basis upon which the jury could have found defendant guilty on one charge but not guilty on a separate but related charge tried at the same time. The majority rule, however, appears to be that courts will not overturn criminal convictions on the ground of inconsistency of general verdicts. Annotation, 16 ALR3d 866 (1967).

Whether or not we have such authority has never been clearly established. *See State v. Gaylor,* 12 Or App 544, 508 P2d 250 (1973). We need not reach that issue here because the verdicts were logically consistent. The films were requested by the police agent. Defendant at first said he would not furnish them. Feeling that he was under increasing pressure from the agent, defendant finally, reluctantly, sold him the films. The photos and the magazine, however, were never requested by the agent. Defendant furnished these voluntarily, hoping to placate the agent. Considering that defendant's primary defense was entrapment, there was a rational basis for the jury's distinguishing the charges based upon the films from those based upon the other materials.

■■ Third, defendant contends that the court erred in denying his request that the court immunize a witness from prosecution upon matters which defendant sought to have him testify. The witness, the person from whom defendant said he had obtained the photographs, magazine and films, was called to the stand. Out of the presence of the jury he exercised his constitutional right to remain silent.

In criminal prosecutions the state has a choice: If a witness refuses to testify on the ground that the testimony may tend to be self-incriminating, the state may either grant the witness immunity, compelling

him to testify (ORS 136.617, 136.619[1]); or it can forego the testimony and preserve its power to prosecute him. Defendant did not have that option. He argues that his rights to due process and equal protection of the laws under the Fourteenth Amendment were therefore violated. Defendant relies, in general, upon *Wardius v. Oregon,* 412 US 470, 93 S Ct 2208, 37 L Ed 2d 82 (1973). In order to protect the balance of rights between the state and the accused in criminal proceedings, the court in that case held that the state could not by statute be accorded the right to notice of alibi witnesses without according defendant reciprocal rights as to witnesses who would rebut the alibi.

*Wardius,* however, does not stand for the proposition that the rights of the state and of the accused are to be in all respects identical. By the very nature of the criminal justice system the state has advantages, and the Due Process Clause does not operate to require that the state's advantages always be balanced by advantages for the defendant. *Wardius* involved a

---

[1]ORS 136.617:

"In any criminal proceeding before a court of record or in any proceeding before a grand jury, or in any proceeding before a court of record under ORS 646.760, if a witness refuses to testify or produce evidence of any kind on the ground that he may be incriminated thereby, and if the prosecuting attorney moves the court to order the witness to testify or produce evidence, the court shall forthwith hold a summary hearing at which the witness may show cause why he should not be compelled to testify or produce evidence, and the court shall order the witness to testify or produce evidence regarding the subject matter under inquiry unless the court finds that to do so would be clearly contrary to the public interest. The court shall hold the summary hearing outside the presence of the jury and the public and may require the prosecuting attorney to disclose the purpose for which he seeks the testimony or evidence. The witness shall be entitled to be represented by counsel at the summary hearing."
ORS 136.619:

"After complying with the order to testify or produce evidence the witness shall not be prosecuted or subjected to any penalty or forfeiture for or on account of any fact or act concerning which, in accordance with the order, he was required to testify or produce evidence. The witness may nevertheless be prosecuted for any perjury or false swearing committed in accordance with the order and the witness shall be subject to penalty for contempt of court for failure to comply with the order."

procedural device designed to strengthen the state's hand. The Supreme Court held that fairness required reciprocity in the absence of a showing of a compelling need for the advantage. It cannot be said that the immunizing process allowed the state is directed at defendant's strategic or tactical situation. To grant defendant the right, in effect, to immunize from prosecution any recalcitrant witness upon the representation that his testimony would be favorable to the defendant would be an innovation which in no way would improve the criminal justice system but would substantially further impair it. The Fourteenth Amendment does not compel such an unreasonable result.

■ Fourth, defendant argues that the court erred in excluding evidence concerning certain conduct of the undercover agent during his investigation of adult entertainment establishments, including defendant's. The defendant sought to introduce evidence that during the course of the investigation the agent had sexual relations with female employees of two massage parlors and supplied marijuana to another individual. Defendant argues that this evidence tended to establish the agent's motive in wanting to make a case against defendant: he needed one case to "save face." The relevance of the evidence under that theory is highly attenuated at best. The trial court properly exercised its discretion in ruling that the probative value, if any, of the evidence was outweighed by its tendency to unduly prolong the trial and to distract the jury from the primary issues.

■ Next, defendant argues that under *Paris Adult Theatre I v. Slaton,* 413 US 49, 93 S Ct 2628, 37 L Ed 2d 446 (1973), the state was required to produce expert testimony that the materials, particularly the magazine "Sweet Linda," "are directed at such a bizarre deviant group that the experience of the trier of fact would be plainly inadequate to judge whether the materials appeal to the prurient interest." 413 US at 56, n 6. In that case the court observed that the

allegedly obscene materials "are the best evidence of what they represent," 413 US at 56, and in a footnote reserved judgment on the issue of whether or not expert testimony might be required in an extreme instance. Even if we assume that in some cases the trier of fact might be unqualified without the aid of expert testimony to judge whether the material appeals to the prurient interest in sex, this is not such a case. While the average juror may not find photographs of a nude pre-teenage girl engaged in masturbation sexually arousing, the average juror is qualified by experience to conclude that such materials do appeal to the prurient interests of a substantial number of individuals. The materials were not directed at such a "bizarre deviant group" as to require expert testimony. *See State v. Tidyman,* 30 Or App 537, 551, 568 P2d 666, *rev den* (1977).

■ Sixth, defendant asserts that the court erred in failing to give the following requested instruction:

> "Applying contemporaneous State's *[sic]* standards, if you find that the material in this proceeding does not appeal to the prurient interest in sex of the average person, but does appeal to a limited segment of society, then, in order for you to find the material obscene, you must find that the material appeals to the prurient interest of such limited segment of our society."

The court instructed the jury in the words of the statute that they could find the material obscene only if they found it "appeals to the prurient interest in sex." Under the circumstances, that instruction was adequate and the court did not err in failing to give the requested instruction. *State v. Wright,* 31 Or App 1345, 572 P2d 667 (1977).

Finally, defendant argues that the court should have granted his motion for acquittal on the ground that the Oregon obscenity statutes under which he was prosecuted are unconstitutionally vague and overbroad. That issue was fully argued and the statutes found constitutional in *Film Follies v. Haas,* 22 Or

App 365, 539 P2d 669, *rev den* (1975), *appeal dismissed* 426 US 913, 96 S Ct 2617, 49 L Ed 2d 368 (1976).

Affirmed.