601 P.2d 279

**William H. HUNTER, Appellant,**

v.

**Alberto BENCHIMOL and Elena Benchimol, his wife, Appellees.**

No. 14175.

Supreme Court of Arizona,
In Division.

Sept. 10, 1979.

Rehearing Denied Oct. 16, 1979.

Treon, Warnicke, Dann & Roush by Michael J. Valder, Phoenix, for appellant.

Renaud, Cook & Videan by J. Gordon Cook, Phoenix, for appellees.

1. Mitral stenosis is defined as a narrowing of the left atrioventricular orifice. To determine if the valve is constricted, a catheter is inserted in the left ventricle of the heart for a pressure measurement. Another catheter is either passed through the right chambers of the heart into a pulmonary wedge position or into the left atrium for another pressure reading. If the

STRUCKMEYER, Vice Chief Justice.

Appellant William H. Hunter seeks to reverse a summary judgment in favor of Alberto Benchimol, M.D., on his complaint charging medical malpractice. Jurisdiction was accepted pursuant to rule 19(e), Arizona Rules of Civil Appellate Procedure. Affirmed.

In determining whether summary judgment is appropriate, the Court will consider the facts in a light most favorable to the party against whom the motion was granted. *Pendleton v. Cilley,* 118 Ariz. 84, 574 P.2d 1303 (1978). The evidence so viewed establishes the following.

Hunter was referred by a Phoenix, Arizona cardiologist to Alberto Benchimol, M.D., a cardiovascular disease specialist, for a cardiac catheterization. Dr. Benchimol attempted an angiogram on January 6, 1970. Approximately fifteen seconds after contrast material was injected into Hunter's body, he developed a severe respiratory reaction to the dye. The procedure was immediately terminated. Consequently, Dr. Benchimol was unable to determine if appellant had mitral stenosis.[1]

Dr. Benchimol testified at the taking of his deposition that the limited studies conducted on Hunter revealed his left ventricle was enlarged, and there was present a moderate degree of mitral insufficiency,[2] and a moderate degree of poor ventricle contraction. He wrote a letter to the referring cardiologist on January 6, 1970, which, in part, read:

"Enclosed please find the catheterization report on your patient, Mr. William Hunter. Our findings established the presence of mild degree of mitral insufficiency which probably is secondary to left ventricular dilatation. In addition, he has marked degree of pulmonary hyper-

pressure in the left ventricle is lower than the other pressure reading, mitral valve stenosis is indicated.

2. Mitral insufficiency is a condition in which the heart valve does not close completely, allowing leakage of blood between the heart chambers.

tension. As indicated to you on the phone, Mr. Hunter developed severe respiratory reaction to the contrast agent. Therefore, this was an incomplete cardiac catheterization. Nevertheless, I feel that the available data is sufficient to establish the diagnosis of primary myocardial disease."

A catheterization report which was written by Dr. Benchimol concluded:

"The findings are in keeping with the diagnosis of mild degree of mitral insufficiency. Pulmonary hypertension secondary to left heart failure. The best diagnostic possibility is primary myocardial disease."

The referring cardiologist stated in his deposition that he "interpreted that catheterization report as ruling out mitral stenosis."

Hunter's condition worsened. On August 31, 1972, he was given another catheterization by Lee Schocket, M.D., a Tucson cardiologist, which revealed severe stenosis of the mitral valve, and thereafter he had successful surgery for replacement of the valve. Dr. Schocket, who performed the second catheterization, deposed that he had "no way of knowing when the onset of the mitral stenosis was" but stated that in ninety-nine percent of the cases, the mitral valve stenosis was a result of the patient contracting rheumatic fever. Hunter had rheumatic fever as a child.

On August 23, 1974, Hunter filed this suit against Dr. Benchimol asserting that the doctor "failed to comply with the applicable and required degree of medical care, skill and prudence * * * by failing to diagnose plaintiff's true heart condition * * ." After extensive discovery, Dr. Benchimol moved for summary judgment for the reason Hunter did not establish the medical standard of care to which Dr. Benchimol should have conformed and that he failed to meet this standard. The Superior Court granted Dr. Benchimol's motion.

The rules of law applicable here were summarized in *Pendleton v. Cilley*, supra. We said:

"It is established that a physician's negligence must be shown by expert medical testimony unless the negligence is so grossly apparent that a layman would have no difficulty in recognizing it. *Harvey v. Kellin*, 115 Ariz. 496, 566 P.2d 297 (1977); *Riedisser v. Nelson*, 111 Ariz. 542, 534 P.2d 1052 (1975); *Boyce v. Brown*, 51 Ariz. 416, 77 P.2d 455 (1938). The burden of establishing negligence must be met both at trial and in opposition to the defendant's motion for summary judgment. *Riedisser*, supra; *Abernethy v. Smith*, 17 Ariz.App. 363, 498 P.2d 175 (1972). We have said that a party opposing a motion for summary judgment must show that evidence is available which would justify a trial of that issue. *Crocker v. Crocker*, 103 Ariz. 497, 446 P.2d 226 (1968)." 118 Ariz. at 86, 574 P.2d at 1305.

Appellant's position that expert testimony is not required in this case implies that the "negligence is so grossly apparent that a layman would have no difficulty recognizing it." He argues that a jury, from its common sense, could determine that Dr. Benchimol was negligent, citing *Vigil v. Herman*, 102 Ariz. 31, 424 P.2d 159 (1967) and *Hardy v. Southern Pacific Employees Association*, 10 Ariz.App. 464, 459 P.2d 743 (1969).

The decisions in *Vigil* and *Hardy* are both inapposite. In *Vigil*, the plaintiff brought a medical malpractice action, urging that a doctor failed to properly examine, diagnose, treat, or advise her of a tubercular condition which reached an advanced stage. The physician-patient relationship spanned 35 to 40 office calls and an indeterminable number of telephone calls. About one week after her last visit to the defendant, the plaintiff consulted another doctor, who, after a series of tests, immediately commenced standard therapy for tuberculosis. At the close of evidence at trial, the court entered a directed verdict in favor of the doctor, predicated in part on the court's conclusion that the plaintiff failed to prove the medical standard of care. It was held this was error, because the testimony of the defendant and another doctor when considered together was sufficient to inform the jury of the applicable standard of care.

*Hardy* is distinguishable on its facts. There, the plaintiff spilled creosote on his lower lip and developed a lesion. He was referred to a medical specialist "to rule out carcinoma." The medical specialist provided medical treatment for about fourteen months, during which time the plaintiff made 34 office visits. The lesion grew worse and cancer developed, necessitating removal of the plaintiff's lower lip. The jury returned a favorable verdict in plaintiff's malpractice action. The Superior Court granted the defendant's motion for a new trial. The Court of Appeals reversed the order granting a new trial and reinstated the judgment. In doing so, the appeals court held:

> "Considering the expert testimony relating to the harmful effects of continuous exposure to sunshine, the defendant's knowledge of the plaintiff's outdoor employment, and his failure during the 14-month period of treatment, according to the plaintiff, to caution against working in the sunlight, we believe that laymen could reasonably conclude that the defendant was remiss in not so advising the plaintiff. The omission to warn here comes within the realm of common knowledge and is therefore an exception to the rule requiring expert testimony." 10 Ariz.App. at 468–69, 459 P.2d at 747–748.

In the instant case, unlike *Hardy*, Dr. Benchimol was not appellant's primary physician, but was merely called upon to perform a set of tests. Dr. Benchimol could not complete the catheterization, so he informed the referring cardiologist of this and the reason. It is true he expressed an opinion that "the best diagnostic possibility is primary myocardial disease." But it cannot be said that this opinion was a negligent diagnosis in the light of his known inability to complete the procedure for determining a mitral valve stenosis.

If we were to assume that Dr. Benchimol did not inform Hunter that the test was incomplete, there is still the question of whether it was his duty to advise Hunter of this fact. The general knowledge of a layman does not encompass the fact that it was Dr. Benchimol's responsibility to inform Hunter that he could not complete the procedure and, hence, it can hardly be said that Dr. Benchimol was so grossly negligent that a layman would have no difficulty recognizing it. Without expert testimony that it was this particular doctor's duty to inform the patient under these circumstances, a jury would have to speculate in order to arrive at a judgment favorable to Hunter. Moreover, it follows from the above that lacking evidence of the standard of care in the medical profession, a jury could not decide as to whether it was Dr. Benchimol's responsibility to advise Hunter that the procedure would have to be repeated in order to rule out mitral stenosis and thus determine whether his heart problem could be helped by surgery.

We conclude the judgment of the court below was correct.

Judgment affirmed.

HOLOHAN and GORDON, JJ., concur.