787 P.2d 1042

STATE of Arizona, ex rel. Thomas E.
COLLINS, Maricopa County
Attorney, Petitioners,

v.

SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, the Honorable Stephen Scott, Judge of Maricopa County Superior Court, Division 35 thereof, and Albright Investment Corporation, Merlyn Dean Albright, Hector Lara, and Steven Sutton, Respondents.

STATE of Arizona, Appellee,

v.

Shih Ching LIN, Appellant.

STATE of Arizona, ex rel. Thomas E.
COLLINS, Maricopa County
Attorney, Petitioner,

v.

The Honorable Rufus COULTER, Jr., Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent,

John Mangan, Rose Mangan d/b/a Far East Adult Book Store; Ronald Eugene Vollmar, Sr., Carole Marie Vollmar, Ronald Eugene .Vollmar, Jr.; and I.A.S., Inc., d/b/a International Adult Shop, Charles L. Clapp and Charles E. Stuart, Real Parties in Interest.

Nos. 18364–SA, 6671–PR and 17962–SA.

Supreme Court of Arizona,
En Banc.

July 2, 1986.

Reconsideration Denied Sept. 9, 1986.

Robert K. Corbin, Atty. Gen. by Jessica Gifford Funkhouser and Gerald R. Grant, Asst. Attys. Gen., Phoenix, for petitioners and appellee.

Richard J. Hertzberg, Phoenix, for respondents and appellant.

John Verkamp, Coconino Co. Atty., Flagstaff, Steven P. Suskin, La Paz Co. Atty., Parker, Roy A. Mendoza, Pinal Co. Atty., Florence, Charles R. Hastings, Yavapai Co. Atty., Prescott, B. Robert Dorfman, Phoenix City Prosecutor, Phoenix, Jack M. Williams, Graham Co. Atty., Safford, David S Ellsworth, Yuma Co. Atty., Yuma, William J. Ekstrom, Jr., Mohave Co. Atty., Kingman, Joe Albo, Jr., Gila Co. Atty., Globe, Lowell D. Hamilton, Mesa City Prosecutor, Mesa, R. William Call, Tucson City Prosecutor, Tucson, Richard W. Donato, Yuma City Prosecutor, Yuma, Roberta N. Miller, Chandler City Prosecutor, Chandler, Alan K. Polley, Cochise Co. Atty., Bisbee, Jose L. Machado, Santa Cruz Co. Atty., Nogales, Vincent A. Iannone, Lake Havasu City Atty., Lake Havasu City, amici curiae of Arizona Prosecuting Attys.

HOLOHAN, Chief Justice.

We took jurisdiction of these three cases to decide an important issue involved in the prosecution of obscenity law violations. The same issue arises in all three cases, and we have for that reason consolidated the cases for the purpose of this opinion. In *State ex rel. Collins v. Superior Court*, No. 17962–SA, the State sought to prosecute Albright Investment Corporation for various obscenity law violations. On July 2, 1984, and prior to trial in the superior court, the State's motion for dismissal without prejudice was granted.

On July 12, 1984 the charges were refiled in Scottsdale Justice Court and a preliminary hearing was set on October 4, 1984. At the preliminary hearing, pursuant to stipulation, the State submitted its case based upon the transcripts of the first preliminary hearing in which no ancillary evidence of obscenity was presented to the court. The defense moved to dismiss based on the ruling in *City of Phoenix v. Fine*, 4 Ariz.App. 303, 420 P.2d 26 (1966). The magistrate granted the defense motion to dismiss. The State filed a timely notice of appeal to the superior court. A.R.S.

§ 13–4032; *Litak v. Scott*, 138 Ariz. 599, 676 P.2d 631 (1984).

The superior court judge refused to set aside the dismissal, and the State challenged that ruling by filing a petition for special action with this court. We accepted jurisdiction.

In *State v. Shih Ching Lin*, 163 Ariz. 315, 787 P.2d 1111 (App.1985), the defendant was charged with production, publication, sale and possession of obscene items. At trial the State presented no expert testimony concerning the contemporary state standards on obscenity. Upon conviction, defendant appealed. The Court of Appeals, Division Two, held the State must produce affirmative evidence on the state standard of obscenity and reversed with directions to enter a judgment of acquittal. (*State v. Shih Ching Lin*, 163 Ariz. 315, 787 P.2d 1111 (App.1985). We granted the State's petition for review.

In *State ex rel. Collins v. Coulter* (No. 18364–SA) three separate defendants all of whom were charged with violating the obscenity statutes filed a motion for new determination of probable cause because the State had not introduced any affirmative evidence on the elements of obscenity at their preliminary hearings. The superior court judge granted the motion and ordered the cases remanded to the justice court. The State filed a special action in this court seeking to have the ruling of the superior court set aside. We accepted review.

The common issue in these cases is whether the State is required to present expert testimony to establish that the material at issue is obscene.

As stated in *State v. Navarrette*, 115 Ariz. 574, 566 P.2d 1050 (App.1977), Arizona's obscenity statute, A.R.S. § 13–3501–3508, was "drawn with an eye toward *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973)." *Id.* at 576, 566 P.2d at 1052. It reads in pertinent part:

An item is obscene within the meaning of this chapter when:

(a) The average person, *applying contemporary state standards* would find

that the item, taken as a whole, appeals to the prurient interest; and

(b) The item depicts or describes, in a patently offensive way, sexual activity as that term is described herein; and

(c) The item taken as a whole, lacks serious literary, artistic, political or scientific value.

A.R.S. § 13–3501(2) (emphasis added).

The defendants contend that *City of Phoenix v. Fine*, 4 Ariz.App. 303, 420 P.2d 26 (1966), requires the State not only to offer into evidence the allegedly obscene material but also to present expert testimony on the elements that comprise the statewide standard of obscenity. They allege a trier of fact is unable to ascertain the state standard absent the introduction of affirmative evidence which establishes the state standard on obscenity.

*Fine, supra*, dealt with a situation in which a city sought injunctive relief against the sale of alleged obscene books and magazines, but the ruling is arguably applicable to criminal prosecution. In *Fine*, there was no testimony at trial concerning the quality of the four books and four magazines that had been seized and placed in evidence at trial, nor was there any testimony on the effect the material might have on the community. Relying on the then applicable federal standard enunciated in *Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), and our statute then in force,[1] the Court of Appeals ruled that expert testimony was necessary to establish whether an item appeals to prurient interest and is lacking redeeming social value. In reaching its conclusions the court stated: "[W]e believe no evidence was presented at trial for any

finding of fact to be made [by the trier of fact]." *City of Phoenix v. Fine*, 4 Ariz. App. at 309, 420 P.2d at 32. "The court may, as any trier of fact, ultimately accept or reject any of the evidence presented to it, but it must have the benefit of evidence." *Id.* at 307, 420 P.2d at 30.

*Fine* was decided in 1966 under the *Roth* standard. Obscenity law today is governed by the trilogy of cases all handed down on the same day in 1973: *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); and *Kaplan v. California*, 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973). The main focus of the trilogy is that obscenity is an extreme expression which is beyond the protection of the First Amendment.

In *Miller, supra*, the Court explained what was necessary to establish what is obscene:

The basic guidelines for the trier of fact must be: (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest [citations omitted]; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political or scientific value.

*Id.* 413 U.S. at 24, 93 S.Ct. at 2615, 37 L.Ed.2d at 431. In specifically rejecting the prior standard [2] of "utterly without redeeming social value,"—which was the language of our statute prior to *Miller* [3]—the

1. A.R.S. § 13–531.01(2)

"Obscene" means that which considered as a whole has as its dominant theme or purpose an appeal to prurient interest or a shameful or morbid interest in nudity, sex or lewdness going substantially beyond customary limits of candor in description or representation of such matters.

2. The prior standard was based on *Memoirs v. Massachusetts*, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966), but as Chief Justice Burger stated in *Miller*, "[the *Memoirs* test] has never commanded the adherence of more than three

Justices at one time." *Miller v. California*, 413 U.S. 15, 25, 93 S.Ct. 2607, 2615, 37 L.Ed.2d 419, 431 (1973).

3. The 1970 amendment added the phrase "and is utterly without redeeming social importance" following "such matters" in paragraph 2 and added paragraphs 3 through 9. The pertinent section then read:

2. "Obscene" means that which considered as a whole has as its dominant theme or purpose an appeal to prurient interest or a shameful or morbid interest in nudity, sex or lewdness going substantially beyond custom-

United States Supreme Court refused to attempt to define obscenity with mathematical precision. The Court reasoned that the use of one rigid, intractable standard for what is "prurient" or "patently offensive" would usurp the adversary system, whereby members of the community as triers of fact are allowed to bring to the deliberations their experience as members of the community. *Miller, supra,* at 30, 93 S.Ct. at 2618, 37 L.Ed.2d at 434. Therefore, "the average person, applying contemporary community standards" is the yardstick for determining what is obscene, as there is "[n]othing in the First Amendment requir[ing] that a jury must consider hypothetical and unascertainable 'national standards.' " *Id.* at 31, 93 S.Ct. at 2619, 37 L.Ed.2d at 435. "It is neither realistic nor constitutionally sound to read the First Amendment as requiring that the people [of any one state] accept public depiction of conduct found tolerable in [another state]." *Id.* at 32, 97 S.Ct. at 2619, 37 L.Ed.2d at 435. (citations omitted). *Mishkin v. New York,* 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966), emphasized that the material be adjudged, not by the impact on individuals on either end of the spectrum, but by the impact on the average person of the community. "[T]he [fact that] ... the jury evaluate[s] the materials with reference to [state-wide standards] serves [the protective purpose espoused in *Mishkin* ] and is constitutionally adequate." *Miller,* 413 U.S. at 33–34, 93 S.Ct. at 2620, 37 L.Ed.2d at 436.

The second in the trilogy, *Paris Adult Theatre I,* was an attempt by the State to enjoin the showing of allegedly obscene films. Although it vacated and remanded the case on the basis that Georgia should reevaluate its obscenity statute, the Court stated it was not error to fail to require presentation of "expert" evidence on the issue of obscenity. *Paris Adult Theatre I, supra,* 413 U.S. at 56, 93 S.Ct. at 2634, 37 L.Ed.2d at 456. (citations omitted) In a footnote, the Court opined that obscenity is

not the traditional subject matter lending itself to expert testimony, as such testimony is generally admitted solely to provide *specialized information* to the jury without which they could not understand the theory of the case. *Id.* at 56 n.6, 93 S.Ct. at 2634 n.6, 37 L.Ed.2d at 456 n.6, *citing* 2 J. Wigmore, *Evidence* §§ 556, 559 (3rd Ed. 1940). Continuing, the Court stated "[n]o such assistance is needed by jurors in obscenity cases," *Id.,* or "[s]imply stated, hard core pornography ... can and does speak for itself." *Id., citing United States v. Wild,* 422 F.2d 34, 36 (2nd Cir.1970) *cert. denied,* 402 U.S. 986, 91 S.Ct. 1644, 29 L.Ed.2d 152 (1971). The allegedly pornographic materials can provide all a jury needs to decide whether a given item is obscene. *Paris Adult Theatre I,* 413 U.S. at 56, 93 S.Ct. at 2635, 37 L.Ed.2d at 456, citing *Ginzburg v. United States,* 383 U.S. 463, 465, 86 S.Ct. 942, 944, 16 L.Ed.2d 31, 35 (1966).

In the third of the trilogy, *Kaplan,* an owner of an adult oriented book store was prosecuted for selling a book containing sexually explicit narrative. The book contained no pictures or other illustrations and had a plain cover. Kaplan was convicted without the presentation of any "expert testimony" that the book was obscene.

The United States Supreme Court stated that a "book seems to have ... a preferred place in our hierachy of values, and so it should[,] ... [as] a book has a continuing life." *Kaplan,* 413 U.S. at 119–20, 93 S.Ct. at 2684, 37 L.Ed.2d at 497. An obscene book can have a continuing negative impact, and, although based on unprovable assumptions, states have the power to enact regulatory legislation, *see Paris Adult Theatre I,* 413 U.S. at 60–63, 93 S.Ct. at 2636–38, 37 L.Ed.2d 458–60, before empirical data is available on whether the regulated material causes harm. *Kaplan,* 413 U.S. at 120, 93 S.Ct. at 2684, 37 L.Ed.2d at 498. As stated previously, Kaplan was convicted without any showing that the book, which was admitted into evidence,

ary limits of candor in description or representation of such matters and is utterly without redeeming social importance.

was "utterly without redeeming social value," despite presentation of "expert" witnesses by the defense.[4] The *Kaplan* court stated there was no "constitutional need for 'expert' testimony on behalf of the prosecution, or for any other ... evidence of obscenity, once the allegedly obscene material itself is placed in evidence." *Id.* at 121, 93 S.Ct. at 2685, 37 L.Ed.2d at 498, citing *Paris Adult Theatre I,* 413 U.S. at 56, 93 S.Ct. at 2634–35, 37 L.Ed.2d at 456.

Our Court of Appeals recognized in *State v. Navarrette,* 115 Ariz. 574, 566 P.2d 1050 (App.1977), that A.R.S. § 13–531.01, as amended in 1974 and later renumbered as A.R.S. § 13–3501, was drawn with an eye toward the rule enunciated in *Miller. Id.* at 576, 566 P.2d at 1052. Later, this court took notice of the causal relationship between *Miller* and the amended statute when we stated in *State v. Bartanen,* 121 Ariz. 454, 591 P.2d 546 (1979), "[i]t is apparent that our legislature relied upon the United States Supreme Court case of *Miller v. California, supra,* in drafting Arizona's obscenity statute." *Id.* at 461, 591 P.2d at 553. In addition, the Court of Appeals specifically noted that although the State had presented an expert witness, such "testimony on the issue of obscenity is not [constitutionally] necessary, [although] it may be considered by the jury," *Navarrette, supra,* 115 Ariz. 574, 577 n.1, 566 P.2d 1050, 1053 n.1 (citations omitted). Additionally, the court noted that the jury is "not bound to accept the conclusion of [defendant's] expert witnesses that the films had serious scientific value." *Id.* at 577, 566 P.2d at 1053.

In *State v. Bartanen, supra,* we not only recognized our legislature's reaction to *Miller v. California, supra,* but also described the definitional standards utilized by our courts in deciding obscenity cases.

[It is] to be measured not by a national standard but by contemporary community standards. Indeed, it may be impossible to require a jury to apply standards that exist beyond their particular commu-

nity and in actual practice a contemporary state standard is actually the standard of the community from which the jury is drawn.

*Id.* 121 Ariz. at 461, 591 P.2d 553. Thus, by 1979 this court had recognized the change *Miller* brought concerning the state obscenity standard.

Our legislature has also consistently reacted to decisions handed down by the United States Supreme Court on the subject of obscenity: in 1957 the United States Supreme Court handed down *Roth,* and the legislature later enacted an obscenity statute. In 1966 the United States Supreme Court decided *Memoirs* and again the legislature reacted with the 1970 amendment. In 1973 the trilogy of cases established a new minimum federal standard for obscenity. In 1974 the legislature reacted by adoption of *Miller* language in amending the obscenity statute. We believe that the practice of the legislature in reacting to the federal supreme court cases included the recognition that the standards would be a matter for the jury.

Since the *Miller* trilogy many jurisdictions have faced the issue of whether expert testimony is necessary in obscenity prosecutions, and they have decided in accordance with the *Miller* trilogy that the prosecution is not required to produce expert testimony—the material itself being sufficient. *See Trans-Lux Corp. v. State ex rel. Sweeton,* 366 So.2d 710, 715 (Ala. 1979) ("complaining party need not present any 'expert' testimony to prove obscenity once the allegedly obscene material is itself placed in evidence"); *Gibbs v. State,* 255 Ark. 997, 504 S.W.2d 719 (1974) (no experts required even for trial to the court); *People v. Wiener,* 91 Cal.App.3d 238, 154 Cal. Rptr. 110 (1979) (absent appeal to a deviate sexual group no expert testimony is required to prove obscenity is within the statutory prohibition); *State v. Gagliardi,* 174 Conn. 46, 381 A.2d 1068 (1977) (the state does not have to present evidence on community standards if performance is so of-

---

4. The defense is free, of course, to introduce expert testimony to attempt to disprove the prosecution's claims. *Smith v. California,* 361

U.S. 147, 164–65, 80 S.Ct. 215, 225, 4 L.Ed.2d 205 (1959) (Frankfurter, Jr., concurring).

fensive no conceivable community standard would permit it); *Harris Enterprises, Inc. v. State,* 408 A.2d 284 (Del.1979) (unless materials are so "bizarre or arcane as to transcend the realm of the jury's experience" expert testimony is unnecessary and the materials themselves are sufficient); *Golden Dolphin No. 2, Inc. v. State,* 403 So.2d 1372 (Fla.Dist.Ct.App.1981) (independent evidence is not necessary to enable a jury to judge obscenity of material which has been placed in evidence); *but see, Fla. Literary Distributing Corp. v. State,* 460 So.2d 1028 (Fla.Dist.Ct.App.1985) (in injunctions, where no right to jury trial exists a presentation of expert testimony is essential); *see also, 134 Baker Street, Inc. v. State,* 172 Ga.App. 738, 324 S.E.2d 575 (1984) (affirmative evidence that subject matter obscene not necessary once item placed into evidence); *State v. Han,* 63 Hawaii 418, 629 P.2d 1130 (1981) (no requirement of "expert affirmative evidence" in obscenity trial when items themselves placed in evidence); *People v. Moore,* 53 Ill.App.3d 75, 11 Ill.Dec. 35, 368 N.E.2d 586 (1977) (even casual observation of cover was sufficient to establish obscenity law violation); *Saliba v. State,* 475 N.E.2d 1181, 1185 (Ind.App.1985) (State need not present an expert witness on obscene nature or community standards although defendant may); *Peters v. State,* 449 N.E.2d 311 (Ind.App.1983) (no need to rebut defendant's expert on community standards); *State v. Gambino,* 362 So.2d 1107 (La. 1978), *overruled on other grounds, State v. Walden Book Co.,* 386 So.2d 342, 345 (La.1980) (prosecution need not offer expert testimony and juror entitled to draw upon own knowledge of average person in community); *Mangum v. Maryland State Bd. of Censors,* 273 Md. 176, 328 A.2d 283 (1974) (no need for prosecution experts and trier of fact not bound by presentation of defendant's expert even if defendant's expert was the only one presented); *Commonwealth v. Trainor,* 374 Mass. 796, 374 N.E.2d 1216 (1978) (material itself may be sufficient but without testimony Commonwealth runs risk that jury will be unable to reach conclusion); *State v. Welke,* 298 Minn. 402, 216 N.W.2d 641 (1974) (no expert required in obscenity trial); *McNary v. Carlton,* 527 S.W.2d 343 (Mo.1975) (prosecution need not as a matter of constitutional law produce expert witnesses to testify as to the obscenity of the material); *State v. Embassy Corp.,* 215 Neb. 631, 340 N.W.2d 160 (1983) (expert not necessary when materials placed into evidence); *State v. Wein,* 162 N.J.Super. 159, 392 A.2d 607 (1978), *rev'd. on other grounds,* 80 N.J. 491, 404 A.2d 302 (1979) (expert evidence that materials not obscene not necessary where materials themselves were actually placed in evidence); *People v. Ciampa,* 57 A.D.2d 932, 394 N.Y.S.2d 727 (1977) (State not required to come forward with anything more than film as the film met the burden); *Grosser v. Woollett,* 45 Ohio Misc. 15, 341 N.E.2d 356 (1974); (experts are not necessary; obscenity determinations may be made from material itself); *Morrison v. State,* 619 P.2d 203 (Okla. Crim.1980) (no special expert needed to judge film); *State v. Grabill,* 34 Or.App. 639, 579 P.2d 316 (1978) (material must be directed at "bizarre" group before expert testimony is needed); *Commonwealth v. Hulehan,* 338 Pa.Super. 309, 487 A.2d 980 (1985) (Commonwealth is not required to present expert testimony to establish material's patent offensiveness even if material designed for "clearly defined sexual group"); *City of Sioux Falls v. Mini-Kota Theatres, Inc.,* 247 N.W.2d 676 (S.D.1976) (expert testimony is not required but is admissible on question of contemporary community standards); *Taylor v. State,* 544 S.W.2d 897 (Tenn.Crim.App.1976), cert. denied, *Taylor v. Tennessee,* 429 U.S. 930, 97 S.Ct. 337, 50 L.Ed.2d 300 (1976) (no need for experts to assist trier of fact in prosecution regarding a film); *Knight v. State,* 642 S.W.2d 180 (Tex.App.1982) (not necessary to introduce expert testimony as affirmative evidence of community standards if the item itself is introduced); *State v. Taylor,* 664 P.2d 439 (Utah 1983) (State has burden to show items violated community standards—it is statutory under U.C.A. 1953 § 76–10–1203(3) that neither prosecution nor defense is required to put up experts); *Freeman v. Commonwealth,* 223 Va. 301, 288 S.E.2d 461 (1982) (no constitu-

tional need for expert or any other ancillary evidence of obscenity once allegedly obscene material is placed in evidence); *State v. Hull*, 86 Wash.2d 527, 546 P.2d 912 (1976) (expert testimony is not required in obscenity convictions and neither is its admission reversible error).

The task of the trier of fact in an obscenity trial is to determine whether the material in evidence is obscene. This means that the line between protected expression and obscenity must be drawn not within the boundaries of taste, propriety or social convention, but at the very limits of community tolerance. *Red Bluff Drive-In, Inc. v. Vance*, 648 F.2d 1020, 1029 (5th Cir.1981), *cert. denied, sub. nom. Theatres West, Inc. v. Holmes*, 455 U.S. 913, 102 S.Ct. 1264, 71 L.Ed.2d 453 (1982). The mere fact that the material presented to the trier of fact is tasteless, rude or degrading is not sufficient to make that material obscene. The average juror, the defendants contend, is not capable of separating personal views about what is obscene versus what constitutes the state standard on obscenity. The contention is made that expert guidance is necessary to guide the jury in applying the proper standard. We disagree. Only when the material becomes patently offensive and appealing to the prurient interest of the average person can the material be found to be obscene. When considering obscenity we are dealing with an extreme, and jurors, faced with such material, do not need the help of experts. The jury is capable of determining from the material presented whether it is patently offensive and beyond the tolerance of the average person in the community. The jury can also make the judgment whether the material is rescued by having serious literary, artistic, political or scientific value.

The defendants argue that it is essential to have expert testimony to establish the state standard on obscenity. They assert that a resident of Show Low cannot be expected to know the tolerance of the residents of Tucson. This argument confuses geography with concept. The standard in *Miller*, however, "is a general standard, not a geographic one." *United States v. Cutting*, 538 F.2d 835, 841 (9th Cir.1976),

cert. denied, *Cutting v. United States*, 429 U.S. 1052, 97 S.Ct. 766, 50 L.Ed.2d 769 (1977). "The purpose of the 'community standards' instruction is not to distinguish attitudes in one area from those in another, but rather to distinguish personal or aberrant views from the generalized view of the community." *Id.*

The finder of fact "is entitled to draw on his own knowledge of the views of the average person in the community or vicinage from which he comes [to make a decision]." *Hamling v. United States*, 418 U.S. 87, 104, 94 S.Ct. 2887, 2901, 41 L.Ed.2d 590, 613 (1974). Although the *Miller* test can result in a jury using " 'local' attitudes because of the limited area from which the jury is drawn, ... this does not make the obscenity standard any more a geographic one than tests involving 'the propensities of a "reasonable" person in other areas of the law.' " *United States v. Cutting, supra*, 538 F.2d at 841, citing *Hamling v. United States, supra*, 418 U.S. at 104–05, 94 S.Ct. at 2901, 41 L.Ed.2d at 613. What the foregoing cases emphasize is that the material at issue must be so offensive that it is outside the limits of customary tolerance of the average person. This standard can be made clear to a jury under proper instructions.

We ask the jury to apply the average man test in many instances in both the civil and criminal law without any aid from expert opinion. To require the jury to determine the standard of the average person in an obscenity trial is no more difficult a task than to ask the jury to determine the behavior of a reasonable man in a negligence action. Nor is there a greater danger in submitting alleged obscenity law violations to the jury under proper instruction than submitting any other important matter to the jury for resolution. Appellate courts are available to protect defendants from any abuse in the application of the standards necessary to remove material from the protection of the First Amendment.

The great weight of authority does not support the need for experts in obscenity trials and we see no reason to continue to apply the *Fine* standard. We hold that

the State is not required to present expert testimony on any element of obscenity once the material is placed in evidence.

The judgment of the superior court in *State ex rel. Collins v. Superior Court* is reversed with directions to reinstate the complaint. The opinion of the Court of Appeals in *State v. Shih Ching Lin* is vacated, and the judgment of the superior court is affirmed. The orders of the superior court in *State ex rel. Collins v. Coulter* remanding the cases against the defendants for a new determination of probable cause are vacated, and the respondent judge is directed to enter orders denying the motions of the defendants for a new determination of probable cause.

HAYS and CAMERON, JJ., concur.

FELDMAN, Justice, dissenting.

While obscenity is not constitutionally protected, the procedure by which we determine what is obscene, unprotected speech directly implicates the first amendment because the threat of criminal prosecution chills freedom of expression. F. SCHAUER, THE LAW OF OBSCENITY at 35–40 (Bureau of National Affairs, 1976). Today's decision is a step toward compelled self-censorship—not just of obscene material but of all material. It would take a hardy soul indeed to continue to stock ULYSSES on the shelves of a bookstore, knowing that the state could prove its case simply by putting the book in evidence with Mrs. Bloom's soliloquy underlined. Who can foresee how many juries, with nothing to guide them but a common dislike for Mrs. Bloom's interminable monologue, would find the material obscene?[1] What is to restrain an overzealous or ambitious prosecutor if he knows he can make his case so easily?

I believe that expert testimony is required by Arizona law and would mitigate

these dangers. As the court correctly points out (*ante* at 247–49, 787 P.2d at 1043–45), A.R.S. § 13–3501 attempts to incorporate the three-part test of *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). The second prong requires a determination of whether the item depicts sexual activity in a "patently offensive way". 413 U.S. at 24, 93 S.Ct. at 2615. I agree with the majority that no expert testimony is required on this issue because the average juror is as capable of determining it as any expert. *See* Rule 702, Ariz.R. Evid., 17A A.R.S.

However, the two remaining parts of the *Miller* test present different problems and mandate a different result. *Miller*'s first prong requires a factfinder to apply contemporary community standards in order to determine whether the item appeals to the prurient interests of the average person. Many of the cases cited at length in the majority opinion (*ante* at 250–52, 787 P.2d at 1046–48) indicate that a jury from a particular community may determine for itself the standards of that community. This may be the proper result under *Miller* and the statutes considered in those cases but is irrelevant in Arizona because our legislature requires that the factfinder use "contemporary state standards". A.R.S. § 13–3501(2)(a).[2] The majority fails to explain how a jury in any particular community can apply contemporary *state* standards to the allegedly obscene material without expert evidence describing contemporary standards and tastes in different parts of the state. It defies common sense to expect that a local jury will consistently intuit a statewide standard.

The result reached by the majority would not be accepted in any other type of case. Suppose, for instance, a contract obligated one party to provide goods or services conforming to the standard generally followed

---

1. A divided court held that ULYSSES should not be suppressed as an "obscene book". Two judges held the book not obscene while one stated:

   Who can doubt the obscenity of this book after a reading of the pages referred to, which are too indecent to add as a footnote to this

opinion? Its characterization as obscene should be quite unanimous by all who read it. *United States v. One Book Entitled Ulysses,* 72 F.2d 705, 709 (2nd Cir.1934).

2. *But see* A.R.S. § 13–3509, effective August 13, 1986; Laws 1986, ch. 411 § 5.

in Arizona by a particular industry or profession. In a dispute as to the quality of these goods or services, could the court permit a finding based upon nothing but the jurors' speculation about appropriate standards? I think not. *See, e.g., In Re Barney Schogel Inc.*, 12 B.R. 697 (S.D.N.Y. 1981) (expert testimony required to show customs of trade); *Frigaliment Importing Co. v. B.N.S. International Sales Corp.*, 190 F.Supp. 116 (S.D.N.Y.1960).[3] Thus, for the reasons set out by Judges Lacagnina and Livermore in the opinion and concurring opinion of the court of appeals (163 Ariz. at 318–20, 787 P.2d at 1114–16), I believe that expert testimony is essential to satisfy our statutory version of the first part of the *Miller* test.

A similar result is required with regard to the third part—whether the item, "taken as a whole, lacks serious literary, artistic, political or scientific value." 413 U.S. at 24, 93 S.Ct. at 2615. On this issue, also, expert testimony is essential to provide information without which many juries would be unable to perform their function. No doubt some juries would have difficulty in finding serious value of any kind in ULYSSES. The book is difficult at best, but is generally acknowledged to have great literary and artistic value. *See, e.g., The New York Times Book Review*, June 15, 1986, at 3. Expert evidence on this subject is a necessity because information about serious literary, artistic, political or scientific value is not consistently within the common knowledge of the average juror.

It has always been the general rule that in such cases, the proponent of an issue cannot get his case to the jury without providing such evidence. M. UDALL & J. LIVERMORE, LAW OF EVIDENCE § 25 at 43 *et seq.; Hunter v. Benchimol*, 123 Ariz. 516, 601 P.2d 279 (1979). Surely, if it is not possible to prove a case of negligence against a doctor, lawyer, accountant, architect or engineer without expert evidence as to the standards of the profession, it should

not be possible to prove a criminal case implicating the first amendment without expert evidence both on statewide standards and on the subject of literary, artistic, political or scientific value.

Abhorrence of obscenity does not outweigh our duty to uphold the constitutional rights of free speech and free press. The threat of unbridled and unhindered criminal prosecution is bound to have a chilling effect upon publishers, libraries, motion picture exhibitors and the like. This effect is only heightened by the threat of unpredictable and arbitrary results. When a particular book or film may be found obscene by a jury in Phoenix and the same work found not obscene by a different jury in Tucson, only the fearless will continue to distribute it in other parts of the state. Further, if we were to review such cases how could we determine what standard was applied or whether it was the proper one?

The problem is not solved by the majority's view that the defendant may present his own expert (*ante* at 250 n. 4, 787 P.2d at 1046 n. 4.) and may thus exculpate himself. Our legal system still requires that the state prove its case before a defendant is put to his proof. Moreover, the cost of defense is itself a chilling factor. The profit to be made from selling or renting a few obscure books or films each year is inconsequential compared to the financial and other costs if one is prosecuted for selling it. The pressure not to distribute marginal works overwhelms the principles and courage of all but the zealot or the wealthy.

Nor do I concur with the majority's view that we may be protected from overzealous prosecution by the appellate bench. By the time the problems reach the appellate bench, the material will long since have been removed from the shelves. In any event, appellate judges as a group are hardly suited to determine contemporary state standards or literary, artistic or politi-

---

**3.** *Frigaliment* is a noteworthy exposition on the definition of a phrase used in a particular trade community. "The issue is: what is [a] chicken?" Plaintiff failed in its attempt to show that the word "chicken" included only young chickens suitable for broiling and frying and not old chickens suitable only for stew. Industry standards as to the meaning of "chicken" could only be established by competent expert testimony.

cal value. Nor was it the contemplation of the constitution, state or federal, that any special group serve as censors of what ordinary people can read, see or hear.

While a requirement of expert testimony on two parts of the *Miller* test would not solve all of the problems raised by obscenity prosecutions, it would certainly act as a leveling factor, forcing the authorities to consult something other than their personal taste in deciding whether to prosecute and providing some restraint on the type of cases which are filed. We must remember that while the Constitution does not protect obscenity, it does protect many types of speech which a majority may think objectionable. For instance, sexual conduct may be explicitly described and still fall within the constitutional protection of the first amendment, F. SCHAUER, *supra* at 41, 279, so long as it is not hard-core pornography. *Id.* It is not always easy to differentiate. The requirement for expert testimony would do little to hinder the prosecution of truly obscene materials but much to prevent the filing of ill-founded cases which may suppress or chill protected speech.

For these reasons I dissent from the majority decision.

GORDON, V.C.J., concurs in Justice FELDMAN'S dissent.