STATE of Iowa, Appellant,

v.

Francis D. GROETKEN d/b/a Francis' Canteen, Appellee.

No. 90–1787.

Supreme Court of Iowa.

Dec. 24, 1991.

Bonnie J. Campbell, Atty. Gen., Roxann M. Ryan, Asst. Atty. Gen., Thomas S. Mullin, County Atty., and Clinton L. Spurrier, Asst. County Atty., for appellant.

William A. Shuminsky and Timothy W. Shuminsky of Shuminsky, Shuminsky & Molstad, Sioux City, for appellee.

Barbara M. Mack of Davis, Hockenberg, Wine, Brown, Koehn & Shors, P.C., for amicus curiae Iowa Civil Liberties Union.

Considered by McGIVERIN, C.J., HARRIS, CARTER, NEUMAN, and ANDREASEN, JJ.

ANDREASEN, Justice.

In January 1989, we stated there "was a gaping void in Iowa's adult pornography statute." *State v. Applause Video, Inc.,* 434 N.W.2d 864 (Iowa 1989). We held Iowa Code section 728.4 (1987) prohibited the sale of hard-core pornography, but did not prohibit the rental of hard-core pornography. *Id.* This void was closed by the legislature in May of 1989. In apparent response to our refusal to extend the coverage of the 1987 statute to the rental of hard-core pornography, the legislature amended section 728.4. *See* 1989 Iowa Acts, ch. 263, § 2. As it extended the coverage of the statute to the rental of hard-core pornography, it also changed the standard by which pornography is to be measured. The standard went from a "contemporary community standard" in 1987 to a "statewide contemporary community standard" in 1989. The definition of what is a "statewide contemporary community standard" and whether this standard must be proven, are the fighting issues in this case.

I. *Factual and Procedural Background.*

Defendant, Francis Groetken, owned and operated Francis' Canteen (Canteen), an adult bookstore in Sioux City, Iowa. In late 1989, Sioux City Police and Woodbury County Sheriff's officers conducted an undercover investigation of the Canteen. Initially, one of the officers purchased four magazines and rented two videotapes. The officer returned two days later and purchased one of the videotapes he had previously rented; a ninety-minute videotape entitled "Sugarpussy Jeans." As a result, Groetken was charged with the rental and sale of hard-core pornography in violation of amended Iowa Code section 728.4 (1989 Supp.). This section provides in pertinent part:

Rental or sale of hard-core pornography.

A person who knowingly rents, sells, or offers for rental or sale material de-

picting patently offensive representations of [certain listed aberrant sex acts and excretory functions], which the average adult taking the material as a whole in applying statewide contemporary community standards would find appeals to the prurient interest; and which material, taken as a whole, lacks serious literary, scientific, political, or artistic value, upon conviction is guilty of an aggravated misdemeanor.

At trial, the State called two officers who presented evidence regarding the undercover investigation. The videotape was received as evidence and shown to the jury. At the close of the State's evidence, defendant moved for a directed verdict of acquittal on the ground that the State had failed to prove: (1) the videotape's lack of serious literary, artistic, political, or scientific value; and (2) the statewide contemporary community standard.

The trial court granted defendant's motion and the case was dismissed. The court stated:

> The State in this case has given you no evidence as to what the statewide community standard is. As a judge—the general law also does not tell me what the standard is, and therefore I cannot instruct you as to what it is.
>
> Since the State must prove to you this standard beyond a reasonable doubt, and it has not, I must on the motion of the defendant dismiss the charge and the case against the defendant.

The State sought and was granted discretionary review. In granting the State's application for discretionary review, this court noted that, "while the defendant may not be held in jeopardy again on this charge, the issue involved raises a question of law important to the judiciary and the legal profession." *See* Iowa Code § 814.5(2)(d) (1989).

The State contends that the trial court erred by concluding that it is required to prove the statewide contemporary community standard as an element of the crime. The State argues that the reference to "statewide contemporary community standards" in section 728.4 is intended merely to provide a jury with a standard to be used in making a factual determination of whether the videotape in question falls within the definition of hard-core pornography provided in the section's remaining language.

Because we agree with the State's argument, we reverse the district court's directed verdict. We do not, however, remand for retrial, as we are constitutionally precluded from doing so. U.S. Const. amend. V as made applicable to the states by U.S. Const. amend XIV, *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); Iowa Const. art. I, § 12.

## II. *Statewide Contemporary Community Standards.*

■ In 1973, the Supreme Court decided the now famous case, *Miller v. California,* 413 U.S. 15, 24, 93 S.Ct. 2607, 2615, 37 L.Ed.2d 419, 431 (1973). In *Miller,* the Court rejected the use of a nationwide standard for evaluating obscenity and held that statewide contemporary community standards are constitutionally adequate to establish whether a work is obscene. *Id.* at 30–33, 93 S.Ct. at 2618–19, 37 L.Ed.2d at 434–36.

Specifically, the Court set forth the following test:

> The basic guidelines for the trier of fact must be: (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.[1]

*Id.* at 24, 93 S.Ct. at 2615, 37 L.Ed.2d at 431 (citations omitted).

In *Miller,* the jury was instructed to apply the statewide standards of the state of California, as were required by statute.

---

**1.** It appears evident that Iowa Code § 728.4 is   patterned upon this test.

The State presented expert testimony regarding California's community standards. *Id.* at 32 n. 12, 93 S.Ct. at 2619 n. 12, 37 L.Ed.2d at 435 n. 12. Even though the Court did not require the State to present such evidence, it noted that its admission was "certainly not constitutional error." *Id.*

In fact, in another obscenity case decided on the same day as *Miller*, the Court expressly rejected any constitutional requirement that the prosecution must offer expert affirmative testimony regarding the obscenity of the materials in question when the allegedly obscene material itself is placed in evidence. *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 56, 93 S.Ct. 2628, 2634, 37 L.Ed.2d 446, 456 (1973), and cases cited therein. *See also Hamling v. United States*, 418 U.S. 87, 104, 94 S.Ct. 2887, 2901, 41 L.Ed.2d 590, 613 (1974).

Groetken argues that these cases do not expressly state whether or not evidence on "statewide standards" is required. However, in a later case, the Supreme Court considered whether a jury is entitled to rely on its own knowledge of community standards or whether a state legislature or some smaller legislative body can declare what the community standards shall be. The Court held that "community standards simply provide the measure against which the jury decides the question of appeal to prurient interest and patent offensiveness" and that community standards cannot be defined legislatively. *Smith v. United States*, 431 U.S. 291, 302, 97 S.Ct. 1756, 1764, 52 L.Ed.2d 324, 336 (1977). The Court analogized contemporary community standards to the standard of reasonableness applied in civil cases:

> "A juror is entitled to draw on his own knowledge of the views of the average person in the community or vicinage from which he comes for making the required determination, just as he is entitled to draw on his knowledge of the propensities of a 'reasonable' person in other areas of the law." It would be just as inappropriate for a legislature to attempt to freeze a jury to one definition of reasonableness as it would be for a legislature to try to define the contemporary

community standard of appeal to prurient interest or patent offensiveness....

*Id.* at 302, 97 S.Ct. at 1764, 52 L.Ed.2d at 336 (quoting *Hamling*, 418 U.S. at 104–05, 94 S.Ct. at 2887, 41 L.Ed.2d at 590). The Court then concluded that "the issues of contemporary community standards for appeal to the prurient interest and patent offensiveness ... are questions for the jury to decide, in its traditional role as factfinder." *Smith*, 431 U.S. at 308, 97 S.Ct. at 1767, 52 L.Ed.2d at 340.

Groetken further argues that *Miller* and its companion cases are "largely irrelevant to this case" because *Miller*, unlike Iowa Code section 728.4, only held that something less than a national standard must be applied in making obscenity determinations, whereas amended section 728.4 mandated the use of a "statewide" standard. Groetken also argues that *Miller* is inapplicable because it did not expressly address whether "statewide community standards" are the same or different from "community standards."

However, the Supreme Court has suggested that the primary concern in obscenity determinations is not whether the word "statewide" is used in state obscenity statutes, but on how the jury makes its determination. For instance, the Supreme Court has stated:

> *Miller* held that it was constitutionally permissible to permit juries to *rely on the understanding of the community from which they came* as to contemporary community standards, and the States have considerable latitude in framing statutes.... A State may choose to define an obscenity offense in terms of "contemporary community standards" as defined in *Miller*, without further specification ... or it may choose to define the standards in more precise geographic terms, as was done by California in *Miller*.

*Jenkins v. Georgia*, 418 U.S. 153, 157, 94 S.Ct. 2750, 2753, 41 L.Ed.2d 642, 648 (1974) (emphasis added). This suggests that the Supreme Court's primary concern is not how the legislature geographically defines

the "community" in state obscenity statutes, but rather that jurors as triers of fact "draw on the standards of their community guided by limiting instructions on the law" and not be instructed to apply some unascertainable national standard. *Miller,* 413 U.S. at 30, 93 S.Ct. at 2618–19, 37 L.Ed.2d at 434.

Other courts have more squarely addressed the issue of whether a "statewide community standard" must be proven by the state. A review of these cases shows overwhelming support for the proposition that the prosecution is not required to prove the statewide community standard.

For example, in *United States v. Easley,* 927 F.2d 1442, 1449 (8th Cir.1991), the jury was instructed to apply the entire state of Minnesota as the "community." The Eighth Circuit held that a court need not instruct a jury that, if it cannot determine Minnesota's community standards, it must acquit defendant. *Id.* at 1450. It also commented that it seems unlikely that a jury would have problems determining community standards. *Id.* In reaching these conclusions, the Eighth Circuit relied on the Supreme Court's statement that "[a] juror is entitled to draw on his own views of the average person in the community or vicinage from which he comes...." *Id.* (citing *Hamling,* 418 U.S. at 104–05, 94 S.Ct. at 2900, 41 L.Ed.2d at 613). The Eighth Circuit also noted that, even though defendants both called expert witnesses on the issue of Minnesota's community standards, "the jury instead relied on its own knowledge of community standards ... to find the materials obscene." *Id.*

The supreme courts of Alabama, Arizona, Massachusetts, and Nebraska have also addressed the issue that this case presents. *See Trans–Lux Corp. v. State,* 366 So.2d 710, 715 (Ala.1979) (state not required to present evidence of statewide community standards when the allegedly obscene material was placed in evidence); *State ex rel. Collins v. Superior Court,* 163 Ariz. 246, 252–53, 787 P.2d 1042, 1048–49 (1986) (same); *Commonwealth v. Trainor,* 374 Mass. 796, 799, 374 N.E.2d 1216, 1218–19 (1978) (holding that expert testimo-

ny was not required as part of the prosecution's proof); *State v. Embassy Corp.,* 215 Neb. 631, 632–36, 340 N.W.2d 160, 162–64 (1983) (holding that the state was not required to prove the community standard).

Groetken further argues that *Miller* and its progeny cases are not applicable to this case because they did not address the issue of whether a jury picked from one small part of a much larger geographic unit can determine a standard for the larger unit without evidence other than the material itself. A Massachusetts appellate court has addressed this precise issue. In *Commonwealth v. Mascolo,* 6 Mass.App.Ct. 266, 271, 375 N.E.2d 17, 22, *cert. denied,* 439 U.S. 899, 99 S.Ct. 265, 58 L.Ed.2d 247 (1978), the obscenity statute required application of statewide standards. The defendant argued that jurors drawn from a single county could not determine and apply statewide standards. *Id.* The court held that "a jury drawn from a statewide venire would [not] be more likely to perceive and to apply the contemporary standards of the [State] as measured by the views of the average citizen than would a jury drawn from a single county." *Id.* Groetken cites no cases holding to the contrary.

*Mascolo* lends further support to the proposition that jurors' application of the views of the average person in the communities from which they come, rather than their personal views, is more important in making an obscenity determination than is the geographic area within a state from which the jurors are drawn. Arguably, a jurors' application of the views of an average Woodbury County citizen is no different than application of the views of an average Iowan.

### III. *Conclusion.*

■ The legislature's addition of the modifier "statewide" in Iowa Code section 728.4 did not create a new element of the crime of renting or selling hard-core pornography. Elements of an offense are determined by the statute defining the crime. *State v. Lampman,* 345 N.W.2d 142, 144 (Iowa 1984). The due process clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the

crime with which the accused is charged. *State v. Gibbs*, 239 N.W.2d 866, 867 (Iowa 1976). The term "statewide contemporary community standard" is not an element of the crime. Rather, it is a yardstick by which the judge or jury must evaluate the material to determine whether it appeals to the prurient interest or lacks any of the listed statutory values.

■ Even though the jurors could not define Iowa's statewide standard during voir dire, most expressed confidence in their ability to work with the other jurors in reaching a consensus on whether or not the videotape in question violates Iowa Code section 728.4. Jurors are entitled to draw upon their own knowledge of the views of adult Iowans. In determining what is currently acceptable in the statewide community, they should consider a statewide view of the material; not simply their own subjective reactions or the reactions of a sensitive or callous minority.

Here, the State introduced evidence that Groetken rented and sold the videotape "Sugarpussy Jeans." The videotape was received as evidence and shown to the jury. The State was not required to introduce any additional evidence to defeat Groetken's motion for a directed verdict of acquittal. The trial court's directed verdict of acquittal in defendant's favor for lack of evidence was error.

REVERSED.